Katherine LOEFFLER and Ted Kenyon, Appellants,

v.

LYTLE INDEPENDENT SCHOOL DISTRICT, Ethel Irene Dove, James Collins, Benton City Historical Society, et al., Appellees.

No. 04–04–00443–CV.

Court of Appeals of Texas, San Antonio.

June 21, 2006.

Rehearing Overruled Sept. 25, 2006.

Ted R. Kenyon, The Law Office of Ted R. Kenyon, P.L.L.C., Ryan G. Anderson, McClenahan, Anderson & Stryker. P.L.L.C., San Antonio, for appellants.

Mark A. Lindow, Lindow & Treat, L.L.P., George E. Grimes, Jr., Eric W. Schulze, Walsh, Anderson, Brown, Schulze & Aldridge, P.C., San Antonio, Thomas P. Cate, Law Office of Thomas P. Cate, P.C., Lytle, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

The motion for rehearing filed by Appellants, Katherine Loeffler and Ted Kenyon, is denied. This court's opinion and judgment dated April 12, 2006 are withdrawn, and this opinion and judgment are substituted. We substitute this opinion to address the trial court's granting of Lytle Independent School District's (Lytle ISD) motion for summary judgment on Loeffler's adverse possession claim.

The primary issue underlying this appeal is ownership of approximately 3.21 acres in Atascosa County, Texas, known as "Benton City School" or "Old Benton City School" property (disputed property). Both the Lytle Independent School District and Katherine Loeffler claimed title to the disputed property through adverse possession. The trial court granted appellees' summary judgment and motion for sanctions, disposing of Loeffler's claims and imposing monetary sanctions against both Loeffler and her attorney, jointly and severally. We affirm in part and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant history of the disputed property begins around 1872 when a two story building was constructed on the property, then owned by Joseph Sweeten. In October 1876, Sweeten sold the upper floor of the building, together with a right of access, to Masonic Lodge No. 379 of Benton. The following year, Sweeten sold the land and the lower floor of the building to John D. Morrison, who used the building to operate a private school known as the Benton City Institute. The last recorded conveyance for the lower floor and the land was January 15, 1878, from Morrison to B.C. Hendrick, who continued to use the lower floor of the building as a school. On December 28, 1909, the Masonic Lodge transferred its interest in the upper floor to the Benton Common School District No. 9.

In 1915, the Benton Common School District No. 9 was consolidated into the newly established Lytle Independent School District.[1] As such, Lytle ISD's interest in the upper floor of the building, as successor in interest, is not contested. Lytle ISD, however, also claims that, although the deed may not have been recorded or was lost, title to the land and lower floor of the disputed property passed

---

1. The Act of March 15, 1915 creating Lytle ISD and consolidating the school districts, at Section 28 provides: "[t]he absolute title to all property within the Lytle Independent School District as here established, of right belonging to the use of public free schools, from whatever source derived, shall, upon the passage of this Act, vest in the Board of trustees of said district and their successors in office."

to the Benton Common School District No. 9 between 1878 and 1915.

In January 2001, Kathleen Loeffler agreed to purchase Ethel Irene Dove's property except for Dove's home and surrounding 1.15 acres. On January 20, 2001, Loeffler and Dove entered into an "Unimproved Property Contract" (Sales Contract) for a 12.95 acre tract, described as 5.95 acres from the A. Cole survey and 7 acres from the Viser survey. Loeffler claimed that Dove represented the 12.95 acres included the disputed property, which was situated north of the Atascosa Creek. However, Dove alleges that while signing the Sales Contract she provided Loeffler with a survey describing 10.26 acres, none of which included the disputed property north of Atascosa Creek. On February 14, 2001, Martin Abstract Title Company issued a title commitment which required Loeffler to provide a survey, field notes, a plat of the survey, and an affidavit of use and possession in order to obtain title insurance. Before the closing date, Loeffler provided a survey to Martin Abstract that showed Dove only owned 9.7 acres, none of which was north of Atascosa Creek—the southern boundary of the disputed property.

On April 26, 2001, Martin Abstract sent Loeffler a revised commitment for title insurance, with a copy of the survey and field notes, describing the land as an 8.55 acre tract south of the disputed property. On May 7, 2001, Loeffler closed on the sale at Martin Abstract and received a deed from Dove with a field note description for the 8.55 acre tract. The deed conveyed only a 1.25 acre portion of land from the A. Cole Survey 528 rather than the 5.95 acres identified in the Sales Contract. The owner's policy of title insurance issued by Martin Abstract to Loeffler corresponded to the deed and described an 8.55 acre tract, which did not include the disputed property.

In the Fall of 2002, Appellee James Collins, President of the Benton City Historical Society, requested that the Board of Trustees for the Lytle ISD donate the disputed property to the Benton City Historical Society ("BCHS"). After noticing that Collins had removed a fence around the disputed property and cleared some brush, Loeffler sent a letter, dated November 3, 2002, to the Lytle ISD Board of Trustees asserting that Lytle ISD did not own the property. Loeffler, further urged the Board to postpone any action that would deed the property to BCHS until she could review all her documentation. At the Board meeting on November 12, 2002, Loeffler claimed ownership of the property because she and her predecessor in title paid taxes on the property. Loeffler asked the Board to rescind the motion approving the donation of the property to the BCHS. Lytle ISD did not donate the property.

Subsequently, Loeffler contacted Dove requesting that she sign a correction deed to convey the disputed property. Dove did not sign the correction deed and disclaimed ever owning or attempting to convey the disputed property.

On January 14, 2003, the Lytle ISD Board of Trustees approved a motion to allow the BCHS to continue cleaning and fencing the property. Around April 4, 2003, Loeffler entered the disputed property and began erecting a fence. As a result, Lytle ISD filed its declaratory judgment lawsuit against Loeffler on April 9, 2003. Loeffler filed counterclaims against the school district, Collins and BCHS, Dove, and Lytle ISD School Board Trustees in their individual and official capacities.

On October 7, 2003, Lytle ISD's attorney sent Loeffler a letter explaining that

each of her claims were legally and factually deficient and if they were not dismissed, the school district would seek sanctions. All parties filed or joined in motions for summary judgment. The trial court granted appellees' motion for summary judgment disposing of each of Loeffler's claims and awarding title of the disputed property to Lytle ISD by virtue of its adverse possession. In addition, the court found Loeffler and her attorney's conduct sanctionable and awarded attorney's fees and costs to Dove and Lytle ISD against Loeffler and her attorney, Ted Kenyon, jointly and severally.

On appeal, Loeffler asserts four issues claiming the trial court erred in (1) overruling Loeffler's special exception to the declaratory judgment action and awarding Lytle ISD ownership of the disputed property; (2) *sua sponte* rendering summary judgment in favor of Collins and BCHS; (3) rendering summary judgment in favor of Dove as to all of Loeffler's claims; and (4) finding Loeffler's filings were frivolous and in assessing sanctions.

### AMENDMENT OF NOTICE OF APPEAL

■ Initially, we address appellant's Motion for Leave to Amend the Notice of Appeal to include Ted Kenyon in this appeal.[2] Kenyon, Loeffler's trial counsel, filed Loeffler's original notice of appeal on June 18, 2004. Kenyon, as attorney for Appellant Loeffler, filed an original brief on October 7, 2004. The following month, on November 3, appellant filed an Opposed Motion for Leave to File an Amended Notice of Appeal seeking to add Kenyon as a party to the appeal pursuant to Rule 25.1(f). TEX.R.APP. P. 25.1(f).

■ Texas Rule of Appellate Procedure 25.1(f) allows an amendment to a notice of appeal to correct a defect or omission subject to being struck for cause. TEX.R.APP. P. 25.1. An amended notice may be filed at any time before the appellant's brief is filed, and after the appellant's brief is filed on leave of the appellate court. *Id.* On October 13, 2004, this Court issued an order requiring Loeffler to amend her brief to comply with Rule of Appellate Procedure 38.1. Loeffler filed her corrected brief on November 12, 2004. Because her amended notice of appeal was filed before her corrected brief, Loeffler argues no leave of court is required. Alternatively, Loeffler claims Kenyon's name was accidently omitted from the notice of appeal, as reflected in her original brief, and amending the notice would not delay the proceeding or unduly burden this Court or appellees.

Without addressing Loeffler's first argument, and liberally construing her original brief, we agree the original brief supports the proposition that Kenyon's name was accidently omitted from the notice of appeal. Because we find Kenyon's name was accidently omitted, we grant Loeffler's motion for leave to amend the notice of appeal to include Kenyon's name on the appeal. *See Woods Exploration & Prod. Co v. Arkla Equip. Co.,* 528 S.W.2d 568, 570 (Tex.1975) (allowing an amendment of a certificate of deposit made in lieu of appeal bond because, in part, it appeared from the record the deposit was made for the benefit of all the defendants); *see also Thomas v. Thomas,* 917 S.W.2d 425, 432 (Tex.App.-Waco 1996, no writ) (stating the party omitted from the appeal bond "did not perfect its appeal because it failed to prove through affidavits or other information

**2.** In an order dated January 5, 2005, this Court carried with the appeal the Appellant's Opposed Motion for Leave to File Amended Notice of Appeal and Appellee's Opposition to and Motion to Strike Appellant's Amended Notice of Appeal. Further the Court requested the parties to address the effect, if any, of TEX.R.APP. P. 25.1(c).

that the [party] was omitted because of *mistake* or *accident*") (emphasis original); *Powell v. City of McKinney,* 711 S.W.2d 69, 70 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (holding that a party who establishes that he was inadvertently omitted from the jurisdiction-invoking cost bond has the right to amend the bond by adding his name to it).

## LOEFFLER'S SPECIAL EXCEPTION

In the first point of error, Loeffler argues the trial court erred in overruling her special exception objecting to Lytle ISD bringing its claim to establish its ownership of the disputed property as a declaratory judgment action. Lytle ISD argues Loeffler failed to show the trial court abused its discretion in overruling Loeffler's special exception or, alternatively, how the trial court's error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a).

### A. Standard of Review

A trial court's ruling on special exceptions is reviewed under an abuse of discretion standard. *Hefley v. Sentry Ins. Co.,* 131 S.W.3d 63, 65 (Tex.App.-San Antonio 2003, pet. denied). A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

### B. Analysis

Texas Rules of Civil Procedure 90 and 91 allow a party to specially except to an adverse party's pleadings. TEX.R. CIV. P. 90, 91. The purpose of a special exception is to "point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations." TEX.R. CIV. P. 91.

Loeffler's special exception claims that a trespass to try title action is the exclusive means to resolve a real property title dispute. However Loeffler, simultaneously, admits in her brief that Lytle ISD's declaratory judgment action is essentially a trespass to try title claim. We agree with Loeffler that Lytle ISD's declaratory judgment action can be characterized as a trespass to try title claim. *See Aguillera v. The John G. and Marie Stella Kenedy Mem'l Found.,* 162 S.W.3d 689, 697 (Tex.App.-Corpus Christi 2005, pet. denied) (holding "if the interested party's suit is in reality one for recovery of land based on equitable title, the action brought is considered a trespass-to-try-title suit and is not an action for declaratory judgment"); *see also Jordan v. Exxon Corp.,* 802 S.W.2d 880, 883 (Tex.App.-Texarkana 1991, no writ) (stating "[a]ny suit that involves a dispute over the title to land is, in effect, an action in trespass to try title"). As such, we are unable to conclude that the trial court abused its discretion in overruling Loeffler's special exception. Loeffler's first issue is overruled.

## SUMMARY JUDGMENT

The trial court determined Lytle ISD, Dove, BCHS, and Collins were entitled to summary judgment on Loeffler's claims, stating in relevant part: (1) Loeffler has no right, title, or interest in the disputed property and (2) Loeffler take nothing against Lytle ISD or its Trustees, Dove, BCHS, and Collins. The trial court also granted judgment on Lytle ISD's claim of ownership stating "title to and possession of [the disputed property] ... is vested in and awarded to the Board of Trustees of the Lytle [ISD]."

### A. Standards of Review

The summary judgments before the trial court included both traditional grounds and no evidence grounds. We review both a no evidence and a traditional summary judgment de novo. *Merrell Dow Pharm.,*

*Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997); *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985).

In a traditional summary judgment motion, the movant must show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon,* 690 S.W.2d at 548–49. A traditional movant has the burden of proving all essential elements of its cause of action or defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex. 1990). All reasonable inferences and any doubts are resolved in favor of the non-movant. *Nixon,* 690 S.W.2d at 549. Once the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact on the challenged issue. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979).

On the other hand, when a party moves for summary judgment under Rule 166a(i) asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the burden is on the nonmovant to present more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. TEX.R. CIV. P. 166a(i); *Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.). If the nonmovant fails to do so, the trial judge must grant the motion. *See Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). We construe the record in the light most favorable to the nonmovant disregarding all contrary evidence and inferences. *Havner,* 953 S.W.2d at 711.

**B. Ownership of the Disputed Property**

Lytle ISD moved for summary judgment claiming ownership of the disputed property by adverse possession, and asserting that Loeffler's ownership claim should be denied as a matter of law because Dove never conveyed the disputed property to Loeffler. The trial court granted summary judgment stating Loeffler had no right, title, or interest in the disputed property and, in a separate paragraph, granted title and possession to Lytle ISD's Board of Trustees.

*1. Lytle ISD's Property Interest Claim*

■ Pursuant to Rule 166a(c), in the summary judgment proceeding Lytle ISD needed to prove that no genuine issue of material fact existed as to its adverse possession claim. *See* TEX.R. CIV. P. 166a(c). Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period. TEX. CIV. PRAC. & REM.CODE § 16.021(1) (Vernon 2002). Lytle ISD moved for summary judgment on the ten year limitations period and, in the alternative, under the twenty-five year adverse possession statute. *See* TEX. CIV. PRAC. & REM.CODE §§ 16.026, 16.028 (Vernon 2002). Loeffler claims the trial court erred in granting Lytle ISD's summary judgment because the evidence indicates use of the disputed property was consistent with Lytle ISD's property interest and not in repudiation of the owner's title as required by adverse possession. We agree.

■ Lytle ISD's predecessor in title entered the disputed property with an ownership interest in the upper floor of the building along with a right of egress and ingress. In order for adverse possession to initiate, Lytle ISD needed to show a repudiation of its existing relationship with the record owner. *See Dickson v. Dick-*

*son,* 993 S.W.2d 735, 738 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding "a person taking possession in recognition of another's title must repudiate or otherwise waive the hostile flag to prevail on a claim of adverse possession"); *accord Busta- mante v. Gutierrez,* 770 S.W.2d 934, 937 (Tex.App.-San Antonio 1989, no writ). Although there is no evidence Lytle ISD, or its predecessor, actually notified the record owner of its claim of right, notice may be constructive or inferred. *Natural Gas Pipeline Co. of America v. Pool,* 124 S.W.3d 188, 194 (Tex.2003).

Constructive notice will be presumed where the adverse occupancy and claim of title has been long continued, open, notorious, exclusive, and *inconsis- tent* with the existence of title in others. *Id.* (emphasis added). "Notice of repudiation must be clear, unequivocal, and unmistakable." *Thedford v. Union Oil Co. of Cal.,* 3 S.W.3d 609, 612 (Tex.App.-Dallas 1999, pet. denied). Importantly, Lytle ISD needed to establish constructive notice of a repudiation prior to establishing the remaining elements of adverse possession. *See Bustamante,* 770 S.W.2d at 937 (holding "before a limitation claim can prevail against the record owner of the land, the claimant must prove . . . a repudiation of the owner's title . . . .").

The evidence does support Lytle ISD's open and continued use of the disputed property from 1915 to 1934. The minutes of the meetings of the Board of Trustees indicate governance over a Benton City School, located in the same building where the Benton City Institute was located, including the hiring of several teachers and janitors. The minutes also reveal authorization for repairs, including repairs on a well and a windmill, and the sale of excess lumber from the disputed property. The Board even held bond and trustee elections at the Benton City School.

Nevertheless, none of these facts are inconsistent with the permissive use and right by which Lytle ISD, through its predecessors in title, entered upon and occupied the disputed property. *See Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707, 710 (1960) (holding "the erection of the barn, pig pen, chicken house and the grazing of milk cows [were not] . . . inconsistent with the permissive use . . . nor are they sufficient as a matter of law to afford the record owner constructive notice of a repudiation"). Although some of the evidence after 1934 indicates Lytle ISD acted in a manner consistent with owning the entire property, and not just the upper floor, this sporadic use falls short of establishing, as a matter of law, the remaining elements of adverse possession—continuous, open, and hostile. For instance, in supporting its adverse possession claim, Lytle ISD relies on several Board actions: in 1934, the Board accepted a bid to wreck the two story wood addition to the building; in 1945, the Board agreed to sell the entire property if it could establish clear title; the following year the Board employed a contractor to remove lumber from the roof of the Benton City School for use in the construction of other Lytle ISD buildings; and in 1947, the Board created a committee to consult with the Masonic Lodge, apparently to inquire if Lytle ISD could demolish the entire building.

Notably, Lytle ISD's attempt to consult with the Masonic Lodge in 1947 appears inconsistent with Lytle ISD's claim of right to the entire disputed property. Further, while relevant independent sources indicate Lytle ISD owned the disputed property, and possibly assist Lytle ISD in establishing constructive notice of a repudiation, the evidence dates no earlier than 1972.

Here, the summary judgment proof nearest to establishing adverse possession

dates between 1915 and 1934. As such, Lytle ISD needed to establish constructive notice of a repudiation ten or twenty-five years before 1934. *See Radford v. Garza,* 586 S.W.2d 656, 661 (Tex.Civ.App.-Corpus Christi 1979, no writ) (stating "whether constructive notice was given ... we look only to potential notice-giving acts during the period of time prior to the last ten year period when ... possession might satisfy all of the other requirements for adverse possession"). However, the evidence relating to this time period can be equally interpreted as using the disputed property according to Lytle ISD's preexisting property interest. *See Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546 (Tex. 1985) (holding "the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in their favor").

Alternatively, if we look to the evidence dating after 1934 and accept any of those acts as constructive notice, questions of fact remain as to whether Lytle ISD's possession was open, continuous, and hostile for the following ten or twenty-five year period. The evidence after 1934 relates to Lytle ISD's use occurring at irregular intervals and fails to establish, as a matter of law, continued use of the disputed property. *See Vaughan v. Anderson,* 495 S.W.2d 327, 331–32 (Tex. Civ.App.-Texarkana 1973, writ ref'd n.r.e.) (holding sporadic, irregular and occasional use of property does not establish the statutory requirement of continuous use).

Considering the deficiencies in Lytle ISD's evidence, we are not prepared to hold that these facts are sufficient, as a matter of law, to provide the record owner with constructive notice of a repudiation of that permissive use. *See York v. Flowers,* 872 S.W.2d 13, 15 (Tex.App.-San Antonio 1994, writ denied) (stating "only in rare instances is a court justified in holding that

adverse possession has been established as a matter of law"). Consequently, because material questions of fact exist with respect to Lytle ISD's adverse possession claim, we conclude the trial court erred in granting the summary judgment. We sustain Loeffler's first issue as it relates to the summary judgment granting title and possession of the disputed property to the Trustees of Lytle ISD.

### 2. *Loeffler's Property Interest Claim*

■ Lytle ISD argued it was entitled to summary judgment denying Loeffler's property interest claim because the evidence proves as a matter of law that Dove did not convey the disputed property to Loeffler or alternatively because Lytle ISD owns the property through adverse possession. Lytle ISD further filed a no evidence motion for summary judgment on Loeffler's property interest claim by adverse possession because there is no evidence to support any element of her claim for adverse possession. The trial court granted Lytle ISD's motion for summary judgment but did not specify under what basis. When the trial judge grants the summary judgment without specifying the basis for the ruling, we affirm the judgment if any of the movant's theories are meritorious. *Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

■ Loeffler's adverse possession claim states that "Dove, her agent(s) and her predecessors in interest held the Disputed Property in peaceable and adverse possession by cultivating, using, or enjoying the Disputed Property for a period of more than 10 years prior to 1997. Dove was in privity of estate with Loeffler when Dove formally transferred the Undisputed Loeffler Property and informally transferred the Disputed Property to Loeffler." Essentially, Loeffler claims title by adverse possession through Dove's matured limitations title: Taking the evidence in

the light most favorable to Loeffler, we conclude there is no evidence to support Loeffler's adverse possession claim. Alternatively, even if we accept Loeffler's evidence, a matured limitations title cannot be transferred orally.

As evidence of an existing material issue of fact, Loeffler states that: the Atascosa County Appraisal District's records list Dove and her predecessor in interest as the owner and that they paid taxes on the disputed property; the Texas Farm Bureau records listed Dove as the owner of the disputed property; Dove erected fences around the school building nearly thirty years ago; Dove stated that her property extended all the way to FM 3175 and that she intended to convey to Loeffler all of her property other than her home.

 If we accept Loeffler's evidence, it establishes that Dove matured a limitation title by her possession years prior to any conveyance to Loeffler. However, there is a key distinction between a matured and unmatured limitations title that Loeffler fails to recognize: "[w]hen title by limitation has matured there is no further place for 'tacking'.... And the title so matured cannot be transferred orally, but can be conveyed only by an instrument in writing." *Haby v. Howard,* 757 S.W.2d 34, 38 (Tex.App.-San Antonio 1988, writ denied); *accord Moser v. Batchelor,* No. 06–04–00096–CV, 2005 WL 1122667 at \*4 (Tex.App.-Texarkana May 13, 2005, no pet.) (citing *Dale v. Stringer,* 570 S.W.2d 414 (Tex.Civ.App.-Texarkana 1978, writ ref'd n.r.e.)); *Kleckner v. McClure,* 524 S.W.2d 608, 614 (Tex.Civ. App.-Fort Worth 1975, no writ). It is undisputed that the deed to Loeffler did not include the disputed property. Loeffler's deposition testimony was that Dove indicated orally to her that she was purchasing the disputed property. Although, assuming this is some evidence, "the oral transfer of possession of the disputed tract would have been sufficient to tack *unmatured* adverse possession, it could not be effective to transfer a matured title." *Haby,* 757 S.W.2d at 38 (emphasis original). Loeffler failed to produce some evidence that Dove conveyed the disputed property by a written instrument. As a result, the trial court correctly granted summary judgment against Loeffler's adverse possession claim because Loeffler cannot prevail on her adverse possession claim as a matter of law.

## C. Loeffler's Claims Against BCHS and Collins

BCHS and Collins filed a no evidence motion for summary judgment against Loeffler's intentional trespass to real property claim asserting Loeffler could not prove that she owned the property. Initially, Loeffler claimed the trial court erred in granting the summary judgment *sua sponte* in favor of Collins and BCHS. In her reply brief Loeffler abandons this claim stating "[t]he following are not issues in this appeal ... the absence of a summary judgment motion by appellees Collins and the BCHS." Loeffler, however, maintains the summary judgment must be reversed because the evidence failed to established that Loeffler could not recover on her claims against BCHS and Collins for trespass as a matter of law. We disagree.

 Trespass to real property requires a showing of an unauthorized physical entry onto the claimant's property by some person or thing. *Castano v. San Felipe Agric., Co.,* 147 S.W.3d 444, 452 (Tex.App.-San Antonio 2004, no pet.). In order to prevail on the motion for summary judgment on her trespass claim, Loeffler needed to produce more than a scintilla of evidence to raise a fact issue regarding her ownership or possession of the property. *See Reynosa v. Huff,* 21 S.W.3d 510, 512

(Tex.App.-San Antonio 2000, no pet.); *see also Cain v. Fontana,* 423 S.W.2d 134, 137 (Tex.App.-San Antonio 1967, writ ref'd n.r.e.).

However, for the reasons discussed above, the trial court's summary judgment negating Loeffler's title and right of possession claim, in effect, disposes of Loeffler's trespass claim against BCHS and Collins as a matter of law. *Rogers,* 772 S.W.2d at 79 (requiring courts to affirm the judgment if any of the movant's theories are meritorious). Accordingly, Loeffler's second issue is overruled.

### D. Loeffler's Claims Against Dove

Loeffler sued Dove for breach of contract, common law fraud, statutory fraud, and violation of the Texas Deceptive Trade Practices Act ("DTPA"), all allegedly arising from Dove's failure to convey 12.95 acres that included the disputed property.

#### 1. *DTPA Claim*

The trial court found that Loeffler's DTPA claim was barred by the statute of limitations. Dove, as the movant for summary judgment on the affirmative defense of limitations, had the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Dove needed to (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applied and had been pleaded or otherwise raised. *Id.* If Dove established that the statute of limitations bars the action, Loeffler had to adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

The sale took place on May 7, 2001. At that point Loeffler knew that Dove did not convey the property described in the Sales Contract and in the alleged verbal representations to Loeffler. Loeffler filed her DTPA claim on June 17, 2003, at least 40 days beyond the two year statute of limitations. TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 2002); *see id.* (stating a DTPA claim is subject to the two-year statute of limitations). While Loeffler claims Dove failed, as a matter of law, to establish when Loeffler knew or should have known that Dove failed to convey the disputed property, certainly the latest Loeffler could have learned of the description discrepancy was at closing when she received the deed. Dove expressly presented and conclusively proved each element of her affirmative defense of limitations. Loeffler failed to raise a genuine issue of material fact as to the affirmative defense of limitations. Consequently, as to Loeffler's DTPA claim, having expressly presented and conclusively proven each element of her affirmative defense of limitations, Dove was entitled to judgment as a matter of law.

#### 2. *Common Law and Statutory Fraud*

Dove filed a no evidence motion for summary judgment asserting no evidence existed as to any of the elements of Loeffler's fraud claims. In support of the traditional motion for summary judgment Dove claims that the evidence proves as a matter of law that there was no fraud. Dove argues Loeffler could not have relied on any misrepresentations in consummating the purchase of the property because she knew the Sales Contract property description did not accurately represent the property before closing the sale. Loeffler contends her common law and statutory fraud claims stem from her reliance on Dove's representation when the Sales Contract was executed. Regardless of whether the alleged fraud occurred in entering into the Sales Contract or thereafter Loeffler could not have reasonably relied on the alleged representations as a matter of law.

Reliance is a necessary element of both common-law and statutory fraud. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex.1997). This reliance must be reasonable and justified. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997); *Gilmartin v. KVTV–Channel 13*, 985 S.W.2d 553, 558 (Tex.App.-San Antonio 1998, no pet.). Construing the record in the light most favorable to Loeffler, the evidence conclusively shows she knew before she consummated the sale that Dove did not own and therefore could not convey the disputed property or 12.95 acres. As such, we agree with Dove that Loeffler could not have reasonably relied on the alleged representations in finalizing the purchase of the property.

Further, Loeffler could not have reasonably relied on the alleged oral representations of Dove or on the description of the property in the Sales Contract when the contract was executed. Even if Dove made the alleged oral representation that she was conveying the disputed property, reliance on such representation is unjustified. Loeffler's testimony was that the deeds Dove provided at the execution of the contract "were vague." Further, on the date the Sales Contract was executed, Dove provided a plat describing a 10.26 acre tract of land and showing a line at the Atascosa Creek south of the disputed property. Although Loeffler stated she did not focus on the plat, this does not justify her reliance on an oral statement given that the deeds were vague, the tax statements that Dove allegedly provided showed over 15 acres and did not concur with the provided plat, and the plat indicated a boundary line at the Atascosa Creek. *See Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (stating "[a] party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party"). As it relates to the property description in the Sales Contract, Loeffler testified that she filled in the description based on Dove's tax statements. Notwithstanding that the tax records are unclear as to whether it included the disputed property, Loeffler stated that her intent at the time of signing the contract was to get a survey. Loeffler further testified that she could not identify the property on the ground based on the information in the tax records. Loeffler had conflicting property descriptions at the time of signing the Sales Contract. We hold, as a matter of law, it was not reasonable or justified for Loeffler to rely on any of the documents Dove provided much less on the general property description derived from tax statements when she drafted the Sales Contract. Consequently, summary judgment was proper on Loeffler's fraud claims based on the lack of justifiable reliance.

### 3. *Breach of Contract*

Dove moved for a no evidence and a traditional summary judgment against Loeffler's claim of breach of contract. Dove asserts there was no evidence of a breach because the Sales Contract merged into the deed at the closing of the sale and the deed, unlike the Sales Contract, describes the property ultimately conveyed to Loeffler. In support of her traditional motion for summary judgment, Dove claims the evidence clearly indicates that there was no meeting of the minds concerning the property to be conveyed until after Loeffler conducted her survey. Further, the doctrine of merger and the parol evidence rule preclude Loeffler from contradicting the contents of the deed. Alternatively, Dove asserts, Loeffler, as a mat-

ter of law, waived her breach of contract claim.

 Dove claims "[t]he property description in the [Sales Contract] was insufficient to the point that the land to be conveyed could not be located on the ground" and thus there was no meeting of the minds until after the survey was performed.[3] In order to succeed in an action for breach of the Sales Contract, Loeffler had to establish an enforceable contract. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex.App.-Houston [1st Dist.] 1997, no writ). To give rise to an enforceable contract, Dove and Loeffler needed mutual assent, or a "meeting of the minds," on the essential terms of the contract. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex.App.-San Antonio 1997, no writ). A description of the land to be conveyed is an essential element of a contract for the sale of land. *Hereford v. Tilson*, 145 Tex. 600, 200 S.W.2d 985, 988 (Tex.1947). The parties' meeting of the minds over the essential terms of the Sales Contract can be expressed or implied. The determination of a meeting of the minds is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied).

In the instant case, neither the Sales Contract nor any of the accompanying documents describes the property to be sold with reasonable certainty. *See Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000) (requiring the terms of a contract to be reasonably certain in order to form an enforceable contract).

The Dove–Loeffler Sales Contract contained the following property description:

1. **PARTIES:** *Mrs. M.D. Dove (Ethel)* (Seller) agrees to sell and convey to *Katherine Loeffler* (Buyer) and Buyer agrees to buy from Seller the property described below.

2. **PROPERTY:** Lot _____, Block ____. _____ Addition, City of *A00159 A Cole SV–528, 5.95 Acres, Atascosa* County, Texas, known as *A00873 WJ Viser SV–527, 7 Acres Atascosa* (Address/Zip Code) or as described on attached exhibit, (the property).[4]

 Loeffler testified by deposition that she filled in the property description according to Dove's tax statements. Loeffler further testified as follows:

Q. Okay. What's been marked as Depo K.L., Exhibit No. 7 is the tax records that are referenced in the Unimproved Property Contract, which is Exhibit No. 1? Is that right?

A. Yes, sir.

Q. Now, is there any place on there that gives a description of the land?

A. Other than "situs". It says "Situs", whatever that means.

Q. Yeah. Do you know what that means?

A. I have no idea.

Q. So—So, you wouldn't be able to locate this land on the ground from looking at this tax record?

A. No.

Q. How did you know this tax record referred to the land you were buying?

---

**3.** We recognize that the failure to appropriately identify the property under a sales contract may violate the Statute of Frauds. *See* TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002). However, we can only address the grounds found within Dove's motion for summary judgment. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997).

**4.** The italicized words indicate the terms filled in by the parties.

A. Because she had stated that she was paying taxes on 15.33 acres, and that the property that the building is on—these aren't quotes—it went up to the road, and that her husband had put the fence behind it, and that at some point, they had a historical marker—not them—

None of the documents Loeffler had at the execution of the Sales Contract assisted in identifying with reasonable certainty the described property. Aside from testifying that the property could not be found based on the tax records, Loeffler stated that the deeds Dove provided were vague. Even if we accept Loeffler's contention that the tax records combined with Dove's oral statement identified that Dove owned 15.33 acres, the location of the 12.95 acres is still unclear. "The authorities speak clearly to the effect that where a tract of land out of a larger tract is insufficiently described, though the larger tract is itself properly described, a contract to convey the same is unenforceable." *Ball v. Parks,* 313 S.W.2d 134 (Tex.Civ.App.-Fort Worth 1958, writ ref'd n.r.e.).

The Sales Contract does not contain a description, such as metes and bounds, that would permit Loeffler, or Dove, to identify with reasonable certainty which portion of Dove's property was subject to the agreement. The Sales Contract is unenforceable as a matter of law because the described property in the Sales Contract does not contain a sufficient description of the property for there to have been a meeting of the minds on the 12.95 acre tract. Accordingly, the trial court did not err in granting Dove's summary judgment on Loeffler's breach of contract claim. We overrule Loeffler's third issue.[5]

---

5. Loeffler's breach of contract claim is based on Dove's failure to convey 12.95 acres as described in the Sales Contract. Our conclusion that the parties lacked a meeting of the minds as it relates to the 12.95 acre tract has no legal effect on the parties purchase and conveyance of the 8.55 acre tract.

## ATTORNEY'S FEES AND COSTS

The trial court granted Lytle ISD and Dove's motion for sanctions against Loeffler and Kenyon, jointly and severally, awarding Dove $21,204.67 and Lytle ISD $35,000.00 for attorney fees and costs incurred through the motions for summary judgment. Additionally, the trial court provided both Dove and Lytle ISD attorney fees and costs in the event appellants filed a motion for new trial and it was denied; an appeal to the intermediate court of appeals and it was unsuccessful; and an appeal to the Texas Supreme Court and it was unsuccessful. The trial court also justified the award to Lytle ISD pursuant to Section 11.161 of the Education Code. *See* TEX. EDUC.CODE ANN. § 11.161 (Vernon 1996). Alternatively, the trial court awarded Dove attorney fees and costs pursuant to Section 17.50(c) of the Business and Commerce Code. *See* TEX. BUS. & COMM.CODE ANN. § 17.50(c) (Vernon 2002). Appellants argue the trial court abused its discretion in imposing the sanctions order and award because their claims were brought in good faith and were factually and legally substantiated.

### A. Standard of Review

A trial court's award of sanctions is reviewed under an abuse of discretion standard. *Herring v. Welborn,* 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied). The determination whether sanctions constitute an abuse of discretion requires an examination of the entire record. *Id.* A trial court abuses its discretion in imposing sanctions if the order is based on an erroneous view of the law or a clearly erroneous assessment of

the evidence. *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.-Dallas 1994, writ denied). As such, an appellate court will view the conflicting evidence in the light most favorable to the trial court's ruling and will draw all reasonable inferences in favor of the trial court's judgment. *Herring*, 27 S.W.3d at 143.

## B. Attorney's Fees and Costs in Favor of Lytle ISD

### 1. *Rule 13 and Chapter 10*

Section 10.004 provides "[a] court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." TEX. CIV. PRAC. & REM.CODE ANN. § 10.004 (Vernon 2002). Section 10.001 states that a person signing a motion or pleading certifies that "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:" (1) the motion or pleading is not presented for an improper purpose, (2) each legal contention is warranted, (3) each factual contention is likely to have evidentiary support, and (4) each denial of a factual contention is warranted. TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon 2002).

 To prevail under Chapter 10, there must be little or no basis for the claims, no grounds for legal arguments, misrepresentation of law or facts, or legal action that is sought in bad faith. *See Herring*, 27 S.W.3d at 143. Similarly, Rule 13 allows a court the option of imposing sanctions on both a party and counsel for pleadings, motions, or other papers signed and filed that are groundless and brought in bad faith or for the purpose of harassment. *In re C.M.V.*, 136 S.W.3d 280, 284 (Tex.App.-San Antonio 2004, no pet.).

The trial court in nine pages described numerous pleadings, motions, and other papers signed by Kenyon in support of the sanctions under Chapter 10 and Rule 13. Among some of the sanctionable conduct, the trial court specifically found that Loeffler's claim of right to the disputed property by adverse possession was groundless and brought in bad faith or for purposes of harassment; Loeffler's special exception, stating that the deeds in Lytle ISD's original petition were voidable because they fail to uniquely identify the disputed property was groundless and brought in bad faith; and that Loeffler's counterclaim for trespass against Lytle ISD's Board of Trustees in their individual capacity was groundless brought in bad faith or for purposes of harassment. Similarly, the court found Loeffler's counterclaim for intentional trespass against Lytle ISD was groundless, that Loeffler's affirmative defense of estoppel lacked evidentiary support, and that Loeffler's counterclaim that Lytle ISD donated the disputed property in violation of Texas Education Code Section 11.1541 lacked evidentiary support.

 In order to determine if a pleading, motion, or paper was groundless the court objectively inquiries as to whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed. *In re United Servs. Auto Ass'n*, 76 S.W.3d 112, 116 (Tex.App.-San Antonio 2002, no pet.). At the time of filing her claims, Kenyon knew Loeffler could not establish adverse possession through her predecessor in interest, Dove, because Dove never exercised an intent to own the disputed property nor did the evidence suggest otherwise. Loeffler also was fully aware that Dove did not own or claim to own the disputed property at the time Loeffler filed this claim. Both Kenyon and Loeffler were aware that Loeffler never received a conveyance of title to the disputed property. Moreover, Kenyon did not present a good faith argument for the exten-

sion, modification, or reversal of existing law. As such, there is some evidence supporting the trial court's conclusion that Loeffler's title claim to the disputed property was groundless and brought in bad faith or for harassment.

█ Further, considering Loeffler's surveyor, using the same deeds, was able to survey the property, Loeffler's special exception to those deeds as insufficient to identify the property was not only groundless but reflects bad faith. *See Monroe v. Grider*, 884 S.W.2d 811, 819 (Tex.App.-Dallas 1994, writ denied) (stating "a party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect and he does not make a reasonable inquiry into the facts before filing a pleading"). Loeffler's intentional trespass claim against Lytle ISD is without evidentiary support and does not present a good faith argument for the extension, modification, or reversal of existing law. Lytle ISD is a political subdivision of the state entitled to sovereign immunity, the limited waiver of sovereign immunity does not extend to intentional torts. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.057(2) (Vernon 1997); *Harris County v. Cypress Forest Public Util. Dist. of Harris County*, 50 S.W.3d 551, 554 (Tex. App.-Houston [14th Dist.] 2001, no pet.).

█ Along the same lines, Loeffler's claim against the individual Trustees that they aided, assisted, advised, or encouraged the commission of intentional trespass was similarly barred by official immunity and the fact that Loeffler did not have a property interest. If Kenyon had conducted a reasonable inquiry on the legal and factual basis of each of Loeffler's claims, he would have discovered the deficiencies. Significantly, many of these deficiencies were pointed out to Kenyon by Lytle ISD's attorney before Kenyon filed additional amended claims. Kenyon was fully aware or should have been that at least some of the claims were not supported by the facts or law.

█ As to Loeffler, a party should not be sanctioned for its attorney's conduct "unless the party is implicated apart from having entrusted its legal representation to counsel." *Glass v. Glass*, 826 S.W.2d 683, 687 (Tex.App.-Texarkana 1992, writ denied). Under Chapter 10 and Rule 13, the trial court must specifically detail the sanctionable conduct in its order and explain the basis for the sanction imposed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 10.005 (Vernon 2002); Tex.R. Civ. P. 13.

█ The trial court's order states, in detail, the infractions supporting its decision to impose sanctions. However, aside from stating that Loeffler verified the pleadings and motions filed, the order makes no distinction between the conduct of Loeffler and the conduct of her attorney. *See Neely v. Comm'n for Lawyer Discipline*, 976 S.W.2d 824, 828 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (stating "Rule 13 requires sanctions based on the acts or omissions of the represented party or counsel, not merely on the legal merit of the pleading"); *Metzger v. Sebek*, 892 S.W.2d 20, 52–54 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (determining under Chapter 10 and Rule 13 that the party should be fined a smaller amount because he was responsible only for affidavit with false information, not the pleadings as a whole). At the time these pleadings and motions were filed, Loeffler at the most provided the factual basis for these claims. The decision of what legal claims, objections, and motions to file was part and parcel of Loeffler's legal representation and was entrusted to Kenyon as her attorney. Because a party should not be punished for their attorney's conduct unless the party is implicated apart from having

entrusted its legal representation, we conclude the trial court abused its discretion in imposing sanctions against Loeffler under Chapter 10 and Rule 13. *See Glass,* 826 S.W.2d at 687–88. Nonetheless, considering the trial court also based the award of attorney fees and court costs on Section 11.161 of the Education Code we are unable to conclude that the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1; *see also* TEX. EDUC.CODE ANN. § 11.161 (Vernon 1996).

2. *Texas Education Code Section 11.161*

 Section 11.161 of the Texas Education Code allows school districts to recover reasonable attorney's fees and costs if "(1) the court finds that the suit is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is for the defendant." TEX. EDUC.CODE ANN. § 11.161 (Vernon 1996). The record shows there was sufficient evidence to support the trial court's determination that several of Loeffler's claims against the Lytle ISD and the Board of Trustees were groundless and brought in bad faith or for harassment. *See Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex. 1985) (indicating the decision to award attorney's fees and costs is subject to an abuse of discretion standard of review). Furthermore, at least as to some of these claims, the trial court rendered judgment in favor of Lytle ISD and the Board of Trustees. Accordingly, because we are unable to conclude that the trial court abused its discretion in imposing sanctions on Kenyon pursuant to Chapter 10 and Rule 13 and in assessing attorney fees and costs against Loeffler under Section 11.161 of the Education Code we overrule appellants issue as it relates to the award of attorney's fees and court costs to Lytle ISD.[6]

C. **Attorney's Fees and Costs in Favor of Dove**

 As to Loeffler's counterclaims against Dove, the trial court found the claims for common law fraud, statutory fraud, violation of the Texas DTPA, breach of contract, and breach of the warranty of good and marketable title were groundless and brought in bad faith or for purposes of harassment.

The trial court's finding that the DTPA claim was groundless and brought in bad faith or for harassment without arguing for an extension, modification, or reversal of existing law or establishment of new law may support an award of sanctions under Rule 13 and Chapter 10 or an award of reasonable and necessary attorneys' fees and court costs under section 17.50(c) of the Texas DTPA. *See* TEX. BUS. & COMM. CODE ANN. § 17.50(c) (Vernon 2002);

---

6. On appeal, neither Kenyon or Loeffler contest the award of attorney's fees and costs as unreasonable pursuant to Section 11.161 of the Texas Education Code or Section 17.50(c) of the Business and Commerce Code. Alternatively, even if appellants raised this issue inferentially, they waived this issue by failing to present arguments and authority supporting their position. *See* TEX.R.APP. P. 38.1; *In the Interest of C.Z.B,* 151 S.W.3d 627, 635 (Tex.App.-San Antonio 2004, no pet.) (holding the party waived the issue on appeal because the "brief [did] not contain any authority in support of his argument regarding unreason-

able and excessive attorney's fees"). Accordingly we do not address the appropriateness of the award. Furthermore, it was appellant's burden to provide this court with a record supporting their allegations of error. *Appleton v. Appleton,* 76 S.W.3d 78, 87 (Tex. App.-Houston [14th Dist.] 2002, no pet.). Appellants failed to provide a reporter's record from the sanctions hearing. Without the assistance of a reporter's record we are unable to conclude whether the trial court erred in the amount of sanctions awarded or whether appellants preserved any error relating to the amount of sanctions. *Id.*

TEX.R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. 10.004 (Vernon 2002). Further, the breach of the warranty of good and marketable title warranted in the deed had no basis in law or fact because the deed did not convey the disputed property and may also serve as a predicate for imposing sanctions under Chapter 10 and Rule 13. As a result, we are unable to conclude that the trial court abused its discretion in imposing sanctions under Chapter 10 and Rule 13 in favor of Dove. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002) ("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision.").

**D. Appellees' Attorney's Fees and Costs on Appeal**

■ Appellants also argue that in reference to the attorney fees and costs for an unsuccessful appeal these sanctions were improper considering no findings of groundless and bad faith filings were made as to their appeal and the award of prospective sanctions improperly chills a party's right to seek appellate review. We find each of appellants' arguments unconvincing.

While the trial court, obviously, made no findings that the appeal was groundless or brought in bad faith, the appellate attorney fees and costs were part of the sanctions award order contingent on an unsuccessful appeal and were designed to compensate appellees for the expenses of defending its award. We find nothing in the language of Chapter 10 or Rule 13 to preclude this award nor do appellants cite to any relevant authority supporting their position. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 10.001–.004 (Vernon 2002); TEX.R. CIV. P. 13. Correspondingly, no chilling effect on the party's right to appeal could arise under these circumstances. *Law Offices of Windle Turley, P.C. v. French,* 164 S.W.3d 487, 492–93

(Tex.App.-Dallas 2005, no pet.) (holding "the appellate attorney fees award was designed to compensate appellees for the expense of having to defend its sanctions award in the event appellant pursued an unsuccessful appeal. We find no chilling effect on appellant's right to appeal in such circumstances"). Accordingly, we overrule Loeffler and Kenyon's fourth issue.

CONCLUSION

We reverse the trial court's summary judgment on Lytle ISD's adverse possession claim vesting title and possession in the Board of Trustees and remand this cause to the trial court for further proceedings consistent with this opinion. In all other respects we affirm the trial court's judgment.