LAW OFFICES OF WINDLE
TURLEY, P.C., Appellant

v.

Robert L. FRENCH, Individually and on
Behalf of the Estate of Velma Rae
French, Deceased, Robert R. French,
Gwenda Dunn, Linda Gilliland, and
Robin French, Appellees

No. 05–04–00112–CV.

Court of Appeals of Texas,
Dallas.

June 2, 2005.

Thomas B. Cowart, Law Office of Windle Turley, P.C., Dallas, for Appellant.

Wade Caven Crosnoe, Thompson, Coe, Cousins & Irons, L.L.P., Austin, Michael Sawicki, Brown, Sawicki and Mitchell, Dallas, for Appellee.

Before Justices MOSELEY, FRANCIS, and MAZZANT.

## OPINION

FRANCIS, Justice.

This is a sanctions case arising out of a lawsuit for attorney fees. The Law Offices of Windle Turley, P.C. sued appellees Robert L. French, individually and on behalf of the estate of Velma Rae French, deceased, Robert R. French, Gwenda Dunn, Linda Gilliland and Robin French to recover attorney fees under contingent fee agreements. At the time this lawsuit was filed, appellant was already litigating these fee claims in Tarrant County through a petition in intervention it had filed two and one-half weeks earlier in appellees' medical malpractice case. Appellant ultimately nonsuited its claims in Dallas County. The Dallas trial court later imposed sanctions against appellant for filing a frivolous suit. In twelve issues, appellant generally contends the evidence is insufficient to support the trial court's imposition of sanctions and also presents several legal arguments asserting the sanctions were improper. After reviewing the record, we conclude the trial court did not abuse its discretion in imposing sanctions. Accordingly, we affirm the trial court's judgment.

This case has a complex procedural history that is intertwined with the parallel proceeding in Tarrant County. We therefore outline some important dates, pleadings, and rulings that are relevant to the issues presented on appeal.

Appellant filed this lawsuit in Dallas County on February 5, 2001. The Tarrant County intervention was filed on January 18, 2001, one day before the final judgment was rendered in the underlying medical malpractice case. The pleadings in both cases were essentially identical except for the Dallas petition's additional request for injunctive relief prohibiting the District Clerk of Tarrant County from releasing any funds paid into the Registry of the Court that represented disputed attorney's fees and expenses. The day after it filed the Dallas petition, appellant moved for summary judgment on its intervention in Tarrant County. Appellees cross-moved

for summary judgment and the Tarrant County trial court signed an order granting summary judgment to appellees on February 28, 2001. Appellant brought an appeal to the Fort Worth court of appeals which affirmed in part and reversed in part. *See Law Offices of Windle Turley, P.C. v. French*, 140 S.W.3d 407 (Tex.App.-Fort Worth 2004, no pet.).

While the Tarrant County intervention was proceeding, appellees filed a general denial and various counterclaims to the Dallas County lawsuit. They also moved for sanctions in the Dallas suit contending, among other things, the purpose of the duplicative lawsuit was to harass them in retaliation for terminating their contract with appellant after Michael Sawicki, appellant's lead counsel on their medical malpractice case, left appellant's firm (appellees later hired Sawicki to represent them). An initial hearing on the sanctions motion was held on April 12, 2001. On June 4, 2002, after the parties had reached an agreement, an order was entered on the parties' nonsuits specifically dismissing all of appellant's claims and all of appellees' counterclaims except for their claim for filing a frivolous lawsuit. The June 4 order also expressly stated that appellees' motion for sanctions remained pending. When the sanctions hearing continued on July 10, appellant argued the June 4 order was a final judgment and the trial court therefore lacked jurisdiction to rule on the sanctions motion. The trial court disagreed and orally awarded appellees sanctions in the amount of $4,876.25. An appeal was filed in this Court before the trial court signed its July 31 order memorializing its July 10 ruling. On appeal, appellant continued to argue that the trial court had lost its plenary jurisdiction to rule on the sanctions motion because the June 4 order was a final judgment. While the Dallas appeal was pending, the trial court granted appellees' supplemental sanctions

motion for conditional appellate attorney's fees. Appellant filed another appeal for the supplemental sanctions order which we consolidated with appellant's original appeal. Ultimately, we dismissed the appellant's appeals for want of jurisdiction concluding there was no final appealable judgment because there was no order disposing appellees' counterclaim for filing a frivolous lawsuit. *See Law Offices of Windle Turley v. French*, 109 S.W.3d 599, 600 (Tex.App.-Dallas 2003, no pet.).

After we dismissed the appeals, the parties returned to the trial court. On November 6, 2003, the trial court signed a final judgment dismissing appellees' frivolous lawsuit counterclaim, awarding appellees $14,500 in appellate fees for appellant's unsuccessful appeals of the July 31 sanctions order and supplemental sanctions order, and conditionally awarding appellees additional appellate attorney fees in the event it unsuccessfully appealed from the November 6 final judgment. This is the appeal from that final judgment.

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied). A trial court abuses its discretion in imposing sanctions only if it based its order on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.-Dallas 1994, writ denied). The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). We review the entire record to determine whether the imposition of sanctions constitutes an

abuse of discretion. *Herring*, 27 S.W.3d at 143. We may not substitute our judgment for that of the trial court. *Gibson v. Ellis*, 126 S.W.3d 324, 335 (Tex.App.-Dallas 2004, no pet.).

■ The bases for the trial court's sanctions award and appellate attorney fees were Chapter 9 and 10 of the Texas Civil Practice & Remedies Code and TEX. R. CIV. P. 13. Appellant contends that none of these provisions support the trial court's award because there is insufficient evidence to conclude the Dallas petition was factually groundless, legally groundless, or filed for an improper purpose. We do not agree.

Section 10.001 of the Civil Practice & Remedies Code provides that the signing of a pleading constitutes a certificate by the signer that to the best of his knowledge, information and belief after reasonable inquiry: (1) the pleading is not being presented for any improper purpose, including to harass or cause unnecessary delay or needless increase in the cost of litigation; (2) each claim defense, or legal contention is warranted by existing law or nonfrivolous argument for extension, or modification or reversal of current law, or establishment of new law; (3) each factual contention has evidentiary support or likely to have evidentiary support after reasonable investigation or discovery; (4) each denial of a factual contention is warranted by the evidence or reasonably based on a lack of information or belief. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2002). If a court determines a pleading was signed in violation of Section 10.001, sanctions may be imposed on the signer, a party represented by the signer, or both. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (Vernon 2002). We focus on section 10.001(1) which prohibits pleadings filed for an improper purpose.

At the hearings on the original sanctions motion, there was evidence that appellees' attempts at trying to resolve the fee dispute were repeatedly rebuffed by firm president Windle Turley with the response of "That's not going to happen." Specifically, Robert French testified that, ". . . it seemed apparent to me that [Turley] really wasn't looking after my case. It was more of a personal situation with him." French further stated he thought the Dallas County suit was filed because, "he was really sore because [Sawicki] had left his law firm. He couldn't get [Sawicki] in any way, so he thought he would go through me. And that's all he's done, is harass me." French further testified that Turley told him it did not matter who tried the case, Turley was still going to get his 45 percent. French also noted that after the Tarrant County trial court indicated appellant was not going to get the relief it sought and instructed the parties to work out a resolution, appellant filed this lawsuit in Dallas County seeking the same relief. Appellant's response to the sanctions motion indicated that the associate attorney who signed the Dallas petition on behalf of appellant was instructed by the firm to file the suit in Dallas County.

The day after appellant filed the Dallas proceeding, it moved for summary judgment in the Tarrant County intervention, thereby causing appellees to respond to two cases asserting virtually identical claims simultaneously. Nothing in the record suggested the Tarrant County trial court was unwilling or unable to resolve the fee dispute so as to warrant a second filing. In fact, at the first sanctions hearing, appellant's attorney explained he filed the duplicative Dallas suit because "things were spiraling out of control and we had to do something to protect our interest." Based on the record before it, the trial court could have determined the Dallas

suit was filed for an improper purpose in violation of Section 10.001(1) of the Texas Civil Practice and Remedies Code. Specifically, the trial could have determined appellant's filed the Dallas lawsuit not to protect their legal interests, but to improperly circumvent an imminent adverse ruling from the Tarrant County trial court poised to finally dispose of the same legal issues. Moreover, the act of filing the Dallas lawsuit could have been viewed by the trial court as unnecessarily prolonging and increasing the expense of litigation for appellees due to the personal animosity between the parties. After reviewing the entire record, including the timing and substance of the various pleadings and the testimony at the sanctions hearings, we conclude the trial court did not abuse its discretion in awarding appellees $4,876.25 in sanctions for appellant's filing of the Dallas lawsuit. Because we conclude the sanctions order is sustainable under section 10.001(1), we need not address appellant's challenges to other possible bases for the sanctions award.

■■■ Appellant also challenges the specificity of the trial court's order awarding sanctions. Section 10.005 requires a sanctions order to describe the conduct the court had determined violates section 10.001 and explain the basis for the sanction imposed. Simply tracking the language of the statute is insufficient. *See Henry v. Low*, 132 S.W.3d 180, 189 (Tex. App.-Corpus Christi, pet. granted). The original sanctions order, in part, states as follows:

> The Court finds that there is good cause to sanction the Law Offices of Windle Turley because it knew that its pleadings were identical to those already filed in and properly before the 141st Judicial District Court in Tarrant County. The Court find that the pleadings were filed in an attempt to harass the French fami-

ly and needlessly prolong litigation and create unnecessary expense.

This language does more than merely track the language of the statute, it describes the act, namely the filing of an identical suit in Dallas County, that violated section 10.001(1) and found the purpose of the filing was to harass the French family by increasing the costs and time of litigation. We cannot conclude that reading the above order, appellant would not understand what its sanctionable conduct was. We therefore reject appellant's challenge to the specificity of the sanctions order.

In addition to the original sanctions award of $4,876.25, appellant also challenges the supplemental sanctions award granting appellees "liquidated" appellate attorney fees of $14,500 for its first unsuccessful appeal of the sanctions awards to this Court and the contingent appellate attorney fees conditioned on an unsuccessful appeal of the November 6 final judgment. Appellant does not contest the amount of the attorney fees. Instead, appellant challenges whether such an award is available as a sanction under Chapter 10.

■■■ We first address appellant's arguments that the award of conditional appellate attorney fees (1) is in effect an improper sanction for filing a frivolous appeal and (2) effectively undermines its right to appeal. Appellant provided little argument and cites no relevant authority for these positions. As such they are waived. *See* TEX. R. APP.P.38.1(h). Moreover, appellant's arguments are unpersuasive. The sanctions order merely awarded appellate attorney fees if appellant was unsuccessful on appeal. It made no findings with respect to whether the appeal was groundless or brought for an improper motive. Likewise, the appellate attorney fees award was designed to com-

pensate appellees for the expense of having to defend its sanctions award in the event appellant pursued an unsuccessful appeal. We find no chilling effect on appellant's right to appeal in such circumstances.

■ Additionally, appellant argues that chapter 10 does not authorize conditional appellate attorney fees as part of a sanctions award. Focusing on the language in the statute which only permits attorney fees that are "incurred," appellant contends only attorney fees already due may be awarded under Chapter 10. Appellant argues that because appellate attorney fees are a future expense, they are not recoverable under either section 10.002(c) or 10.004(c)(3). We read the sanctions orders as awarding appellate attorney fees only after the expense is incurred as a result of appellant's unsuccessful appeal. We therefore reject appellant's position that such conditional awards are contrary to Chapter 10. Moreover, to the extent appellant attempts to apply this argument to the $14,500 in attorney fees awarded to appellees for the first appeal, we note that those fees had been already been incurred when the trial court made that award.

■ Appellant also argues that because the earlier appellate proceeding was dismissed for want of jurisdiction, the disposition of the first appeal is insufficient to trigger the condition imposed by the trial court. We disagree. Appellant chose to appeal the sanctions orders challenging, among other things, the trial court's plenary jurisdiction to rule on the sanctions motion. We specifically rejected that claim and concluded there was no final judgment from which an appeal could be taken. The supplemental sanctions order conditioned the award of appellate attorney fees on appellant's unsuccessful appeal. Because appellant did not receive any relief from the trial court's sanctions order as a result of its first appeal, it was unsuccessful and thus satisfied the condition of the trial court's order. We also reject appellant's argument that all appellate attorney fees must remain conditional until the underlying merits of the sanctions award have been determined in a second appeal. Appellant relies exclusively on *In re Ford Motor Company,* 988 S.W.2d 714 (Tex.1998) for this contention. However, our reading of *Ford* differs from appellant's interpretation. In *Ford,* the sanctions order at issue ordered Ford to pay $25,000 in attorney fees if Ford sought mandamus review of the sanctions order. *Id.* at 718. Because the order was not conditioned on Ford's failure to obtain relief, it effectively was a monetary penalty against Ford for exercising its legal rights. *Id.* at 722. In the case before us, the award of appellate attorney fees was conditioned on appellant's failure to obtain relief. Moreover, that condition was satisfied when we dismissed appellant's first appeal for want of jurisdiction. We therefore conclude that the trial court did not abuse its discretion in awarding appellees appellate attorney fees.

■ Finally, appellant challenges the trial court's award of interest on appellate attorney fees. The trial court awarded post-judgment interest on the $14,500 in liquidated attorney fees from the date of appellant's notice of appeal challenging the original sanctions order. The trial court awarded post-judgment interest on the conditional attorney fees from date of the notice of appeal from the final judgment, or, in the case of an appeal to the Supreme Court of Texas, the date appellant files its petition for review. Citing a concurring and dissenting opinion by Justice Hecht as authority for its position, appellant argues that because appellate attorney fees are not owed until the conclusion of its unsuccessful appeal, post-judgment interest

should run from the disposition date of the appeal. *See C & H Nationwide, Inc., v. Thompson,* 903 S.W.2d 315, 329 (Tex.1994) (Hecht, J., concurring and dissenting). In *Thompson,* however, the issue before the court was whether prejudgment interest should be awarded on future damages not yet sustained. *See id.* at 328. Here, appellees would begin to incur attorney fees upon the filing of the appeal, thus it is appropriate to begin the post-judgment interest from the date of the appeal filing. Other courts that have addressed this issue have agreed that post-judgment interest should run from the date the appeal is filed. *See Moore v. Bank Midwest, N.A.,* 39 S.W.3d 395, 404 (Tex.App.-Houston [1st Dist] 2001, pet. denied), and *O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 250 (Tex.App–San Antonio 1998, pet. denied). We therefore conclude the trial court did not abuse its discretion in ordering post-judgment interest on appellate attorney fees to run from the date the appeal is filed.

After reviewing the record in its entirety we conclude the trial court did not abuse its discretion in awarding appellees the underlying sanctions, appellate attorney fees, and post judgment interest. We affirm the trial court's judgment.