# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00114-CV

Clifford Zeifman, Appellant

v.

Sheryl Diane Michels, Karl E. Hays, and John Barrett, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-06-002930, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clifford Zeifman appeals an order denying his motion for sanctions against appellees Sheryl Diane Michels, Karl E. Hays, and John Barrett, and awarding each appellee $10,000 for attorney's fees incurred in defending against Zeifman's motion. We will affirm the district court's judgment.

## BACKGROUND

This appeal is the latest to arise from a series of legal battles involving Zeifman and Michels that has spanned almost ten years, cost them hundreds of thousands of dollars of legal fees, and generated no less than five previous opinions from this court.[1] As remarkable as it seems now,

---

[1] *See Michels v. Zeifman*, No. 03-08-00287-CV, 2009 Tex. App. LEXIS 1017 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.); *Zeifman v. Michels*, 229 S.W.3d 460 (Tex. App.—Austin 2007, pet. denied); *In re Zeifman*, No. 03-06-00601-CV, 2006 Tex. App. LEXIS 11340 (Tex. App.—Austin Nov. 22, 2006, orig. proceeding) (mem. op.); *Zeifman v. Michels*, 212 S.W.3d 582 (Tex. App.—Austin 2006, pet. denied); *see also Zeifman v. Nowlin*, 322 S.W.3d 804 (Tex. App.—Austin 2010, no pet.).

Zeifman and Michels once got along well enough to get married, as they did in 1992, and they even had two children together: G.L., a son, born in 1994, and A.A., a daughter, born in 1997. But Zeifman and Michels divorced in 1998, and G.L. and A.A. have since spent their formative years in the shadow of "extensive and acrimonious litigation" between their parents that is ostensibly aimed at advancing each parent's perception of the children's welfare. *See Zeifman v. Michels*, 229 S.W.3d 460, 461–62 (Tex. App.—Austin 2007, pet. denied).

The final divorce decree was based on an irrevocable mediated settlement agreement filed with the district court and incorporated into the decree. *See* Tex. Fam. Code § 6.602. The decree named both parents as joint managing conservators and, of relevance here, incorporated the following negotiated agreement regarding their young children's education:

> The Court finds that the parties have agreed and IT IS THEREFORE ORDERED that the children shall attend the University of Texas Lab School until such a time as the children are of the age to attend elementary school. The Court finds that the parties have agreed and IT IS THEREFORE ORDERED that, at that time, the children shall attend the public school in the following order of priority for elementary school: (1) Bryker Woods; or (2) Casis; provided, however, that if neither party lives in a residential area eligible to attend either Bryker Woods or Casis, then the children shall attend elementary school which the children are eligible to attend, at the highest rated school, the highest rating being determined by the annual TAAS testing, using the previous year's rankings, or shall attend another elementary school to which the parties agree in writing. The Court finds that the parties have agreed and IT IS THEREFORE ORDERED that for middle school, the children shall attend the middle school into which the children's elementary school feeds. The Court finds that the parties have agreed and IT IS THEREFORE ORDERED that for high school, the children shall attend the high school into which the children's middle school feeds.

The decree anticipated that the parents might have disagreements regarding educational decisions for their children that they could not resolve, and provided the following mechanism in that event:

The Court finds that the parties have agreed and IT IS THEREFORE ORDERED that if the parties cannot agree on educational decisions for a child, the parties shall follow the recommendations of the person that is the child's teacher at the time of the decision.

Pursuant to the decree, A.A., the youngest child, spent her first-grade year at Bryker Woods Elementary, which is a public school in the Austin Independent School District (AISD). In April 2004, toward the end of that school year, Michels applied for her admission to St. Andrew's Episcopal School—a private school—for the next school year. She did not notify Zeifman of the application until after A.A. had been placed on St. Andrew's waiting list. In June 2004, A.A. was accepted for admission. Zeifman objected to the change of schools and insisted that the parties follow the decree. Pursuant to the decree, Michels consulted with A.A.'s first-grade teacher at Bryker Woods, who advised Michels that she thought it would be best if A.A. stayed at Bryker Woods.

On July 19, 2004, Michels filed a petition to modify the parent-child relationship. After a hearing, the district court modified the decree to provide that Michels have the sole right to make educational decisions for A.A. Zeifman appealed the district court's decision to this Court. On August 4, 2006, we reversed the district court's modification order, concluding that there was legally insufficient evidence to support the district court's finding that the circumstances of the child or of either conservator had materially and substantially changed so as to warrant the modification of the decree. *See Zeifman v. Michels*, 212 S.W.3d 582, 596 (Tex. App.—Austin 2006, pet. denied). We held that the district court abused its discretion in modifying the decree and rendered judgment in favor of Zeifman.

3

On August 9, 2006, after we released our opinion, but before mandate issued, Zeifman wrote Michels a letter indicating his understanding of our opinion to be that "the joint custody and decision making agreed in the decree is fully restored and the school [A.A.] attends is stipulated by the same court order." Accordingly, Zeifman wrote that he had "informed Brykerwoods of [A.A.]'s re-enrollment and completed the necessary paperwork."

On the next day, one of Michels's attorneys, appellee Karl Hays, sent a letter to Zeifman's attorney at the time, Jimmy Vaught, indicating Michels's belief that this Court's opinion was "not effective or enforceable" until the mandate issued and that the May 25 order was still in effect, leaving Zeifman without authority to re-enroll A.A. at Bryker Woods. To the extent Zeifman contended that the parties were subject to the divorce decree's terms, Hays gave notice that Michels did not consent to A.A.'s enrollment at Bryker Woods. Hays also stated that if Zeifman insisted that the divorce decree was in effect, they would need to arrange to obtain a recommendation from her current teacher "as soon as possible in light of the impending start of the academic year." Vaught responded the same day expressing disagreement with Michels's position and asserting that the teacher recommendation made in 2004 that A.A. remain at Bryker Woods was still effective. Vaught took the position that, "[b]y enrolling [A.A.] in Bryker Woods, Mr. Zeifman is adhering to the recommendation" of her teacher "which Ms. Michels disregarded."

On the same day, Hays sent a letter to the principal of Bryker Woods requesting that the school deny A.A.'s re-enrollment based on the district court's May 25, 2005 order granting Michels the exclusive right to make educational decisions for A.A. (the order that this Court had reversed several days before). The letter enclosed a copy of the May 25 order as well as a copy of the "Travis County Standing Order Regarding Children, Property and Conduct of the Parties,"

4

which provides that children of parties to a pending family law case must not be withdrawn from the school where they are enrolled without the consent of both parents. Hays stated that he was providing the school with these orders because it was his understanding that Zeifman was "attempting to register [A.A.] at Bryker Woods," but Zeifman "has no authority" to do so and Michels "objects to any effort" by Zeifman to enroll A.A. at Bryker Woods. Hays did not mention this Court's opinion reversing the May 25 order.

On August 14, 2006, the day before the Bryker Woods's school year began, Michels sued AISD seeking injunctive relief to prevent the district from permitting A.A. to be enrolled at Bryker Woods or any other AISD school as the 2006 school year began. Michels alleged that permitting such enrollment would (1) violate Michels's exclusive parental rights (at least until the mandate issued) to make educational decisions on behalf of A.A. and (2) "actively assist [] . . . and aid[] and abet[] Clifford Zeifman in the violation of a valid court order," the Travis County standing order it had previously provided to Bryker Wood's principal.[2] Michels did not name Zeifman as a party to this action, nor did she provide notice to him or his attorney on the day the action was filed.

---

[2] This standing order, applicable to "every divorce suit and every suit affecting the parent-child relationship filed in Travis County" after January 1, 2005, prohibits parties, "while the lawsuit is pending before the court," from actions including "[d]isrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court." *See* Travis Co. Standing Order Regarding Children, Property and Conduct of the Parties (Travis Co. Dist. Clerk's File No. 121,012 (Local Rules and Orders)) (effective Jan. 1, 2005). Although the parties' 1997 divorce decree predated the standing order, Michels alleged that Zeifman had made himself subject to the order by filing a cross-petition in a second modification proceeding she had initiated in 2005 concerning their other child.

5

On August 14, Michels obtained an ex parte temporary restraining order against AISD.[3] Four days later, on August 18, Zeifman filed a petition in intervention, motion to dismiss, and motion for sanctions. Zeifman pleaded that he had a justiciable interest in Michels's new lawsuit as A.A.'s father and co-managing conservator, and as respondent and counter-petitioner in the ongoing litigation. Zeifman moved to dismiss Michels's suit as an improper attempt to circumvent the district court's jurisdiction over the divorce decree and this Court's jurisdiction over "the issue of [A.A.'s] education."

Zeifman also sought sanctions under rule 13 of the Texas Rules of Civil Procedure, chapters 9 and 10 of the Civil Practice and Remedies Code, and the district court's inherent power. He complained chiefly that Michels had filed a "frivolous and groundless" separate suit against AISD, rather than seeking relief in the divorce and custody case, to circumvent the jurisdiction of the district court and this Court, and in a manner deliberately calculated to avoid his knowledge or participation for a short, but critical, period of time.

A hearing on Zeifman's intervention, motion to dismiss, and motion for sanctions was set on the third business day thereafter, Wednesday, August 23. On Monday, August 21, Michels filed a rule 11 agreement with AISD, dated August 18, whereby AISD agreed not to permit A.A. to be enrolled at or attend Bryker Woods "until such time as [AISD] is presented with a final, non-appealable order expressly authorizing such enrollment and attendance," in return for Michels's

---

[3] The temporary restraining order restrained AISD from:

1. Permitting [A.A.] to be enrolled at Bryker Woods Elementary School.
2. Permitting [A.A.] to attend classes at Bryker Woods Elementary School.
3. Taking any action which would facilitate or permit [A.A.'s] attendance at Bryker Woods Elementary School.

agreement to dismiss her pending suit. Michels filed a notice of non-suit on August 22 and, on the day of the hearing, filed a motion to strike Zeifman's intervention. After a hearing in which only argument was presented, the district court signed an "Order Confirming Nonsuit" and, by separate order, granted Michels's motion to strike Zeifman's intervention, dismissed as moot his motion to dismiss, and denied his motion for sanctions.

Zeifman appealed that order to this Court. *See Zeifman*, 229 S.W.3d at 468. In a ruling handed down during the summer of 2007, we concluded that the district court abused its discretion in striking his intervention. *Id*. Additionally, because this erroneous ruling had been a predicate for the district court's ruling on Zeifman's sanctions motion, we remanded the sanctions motion for further proceedings and instructed the district court to "carefully consider the facts known by Michels at the time she filed suit against AISD when determining whether sanctions are appropriate." *Id*. However, it would be several years before Zeifman would return to his pending sanction motion.

On August 21, 2006, around the same time Michels's injunction action was being litigated in the district court, Zeifman had filed in the remanded modification suit a "Motion to Implement Third Court of Appeals Judgment and Opinion Concerning Educational Decisions for A.A.," requesting that our opinion in that case "be immediately implemented and that [he] be authorized to re-enroll [A.A.] at Bryker Woods Elementary School . . . ." The district court set aside the modification order, but otherwise denied Zeifman's requested relief, effectively returning the parties to the terms of the original divorce decree. Wanting more, Zeifman then filed a petition for writ of mandamus in this Court. We denied Zeifman's petition, explaining that our order vacating the prior modification order left "the parties to resolve any disputes concerning

7

A.A.'s education according to their agreed-upon mechanisms in their original divorce decree." *In re Zeifman*, No. 03-06-00601-CV, 2006 Tex. App. LEXIS 11340, at *2 (Tex. App.—Austin Nov. 22, 2006, orig. proceeding) (mem. op.).

Shortly before we handed down our opinion in the injunction action, on June 8, 2007, Zeifman and Michels signed agreed temporary orders in the modification suit providing that A.A. "shall continue to be enrolled in and attend exclusively St. Andrew's . . . , until and through the time final trial of this case has been concluded." The parties further stipulated "that regardless of any ruling" in Zeifman's appeal of the order striking his intervention in the AISD injunction suit, A.A. "shall continue to be enrolled in and attend exclusively St. Andrew's . . . during the pendency of this suit . . . ."

Zeifman then filed a separate lawsuit against Michels, Hays, and two other lawyers who had represented Michels in the litigation against him, Becky Beaver and appellee John Barrett, seeking damages based on their involvement in the injunction action. On the defendants' motions, the district court granted summary judgment against all of Zeifman's claims. Zeifman appealed that order to this Court, and we affirmed. *See Michels v. Zeifman*, No. 03-08-00287-CV, 2009 Tex. App. LEXIS 1017, at *2 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.). Zeifman also filed grievances against the attorneys with the State Bar of Texas, which were summarily dismissed. He also filed suit against an amicus attorney, alleging "fraud" and "gross negligence" in connection with her representation of his other child in the divorce proceedings. The district court granted summary judgment against Zeifman and sanctioned him for filing a frivolous lawsuit. Zeifman appealed this order as well, and we once again affirmed. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 812 (Tex. App.—Austin 2010, no pet.).

On September 1, 2010, more than three years after this Court's opinion remanding his sanction claims in the injunction suit, Zeifman pursued those claims again. An evidentiary hearing was held. Eventually, the district court signed an order denying Zeifman's sanctions motion and instead awarding $10,000 each to Hays, Barrett, and Michels for their attorney's fees incurred in defending the motion. Zeifman appealed that order.

## ANALYSIS

In two issues, Zeifman asserts that the district court abused its discretion in denying his motion for sanctions, urging that he was entitled to sanctions under, respectively, Rule of Civil Procedure 13 and chapter 10 of the Civil Practice and Remedies Code. *See* Tex. R. Civ. P. 13, 215; Tex. Civ. Prac. & Rem. Code §§ 10.001–.005. In a third issue, he argues that the district court abused its discretion in awarding the appellees attorney's fees against him. The appellees all counter that the district court acted within its discretion in denying Zeifman's motion and awarding them attorney's fees. Barrett and Hays also contend that Zeifman lacked standing to assert his motion for sanctions. Finally, in a cross-point, Hays requests that we impose attorney's fees against Zeifman for filing a frivolous appeal.

### Standing

Before we reach the merits, we consider the contention of Barrett and Hays that Zeifman lacked standing to seek sanctions against them. Standing is a component of subject-matter jurisdiction, and is reviewed de novo. *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 147 (Tex. App.—Austin 2005, no pet.). In response to Zeifman's motion for sanctions, Barrett and Hays have each interposed pleas to the jurisdiction asserting that Zeifman had not been a party to

9

the injunction lawsuit and that AISD has been the sole defendant when the pleadings that form the basis of his sanctions motion were filed and the TRO was obtained. Because rule 13 of the Rules of Civil Procedure and chapter 10 of the Civil Practice and Remedies Code concern appropriate punishment for "parties" that file lawsuits without merit, *see* Tex. R. Civ. P. 13, 215; Tex. Civ. Prac. & Rem. Code § 10.001, Barrett and Hays argue that only the party against whom suit is brought may seek sanctions. They further maintain that no Texas court has recognized the right of a third-party to intervene in a case and seek sanctions for pleadings that were not filed against the intervenor and conduct that occurred prior to the intervenor's appearance. Hays likens Zeifman's efforts to obtain sanctions to intervening in a suit and thereafter asserting a claim for malicious prosecution.[4]

Zeifman responds that a claim for malicious prosecution requires proof of "the institution or continuation of civil proceedings against the plaintiff," while rule 13 and chapter 10 sanctions do not contain similar, specific requirements entitling only particular parties to relief. *See* Tex. R. Civ. P. 13 ("If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction."), 215; Tex. Civ. Prac. & Rem. Code § 10.002 ("A party may make a motion for sanctions, describing the specific conduct violating Section 10.001."); *see also Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (stating elements of malicious prosecution). Zeifman notes that this Court already determined that he "had a justiciable interest, was a proper party to the suit," and therefore, could seek sanctions. *See Zeifman*, 229 S.W.3d at 468 ("Zeifman, as we have determined,

---

[4] In fact, Zeifman did assert a claim of malicious prosecution against Hays, Barrett, and Michels in separate proceedings. *See Michels*, 2009 Tex. App. LEXIS 1017, at *15–19 (holding that Zeifman failed to establish first element of malicious prosecution claim).

was a proper party. Michels's non-suit thus could not defeat or render moot his claims for sanctions and for attorney's fees . . . ."). Because we have previously ruled that Zeifman was a proper party to the suit, and because nothing in the language of rule 13 or chapter 10 indicates that intervenors may not seek relief under those provisions, we conclude that Zeifman had standing to pursue his motion for sanctions. *See id.*

**Standard of review**

We review a trial court's award or denial of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). In matters committed to a district court's discretion, the test is whether the ruling was unreasonable or arbitrary or whether the court acted without reference to any guiding rules or principles. *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 249 (Tex. App.—Austin 2007, no pet.). In deciding whether the denial of sanctions constitutes an abuse of discretion, we examine the entire record, including the findings of fact and conclusions of law, if any were made, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's judgment. *Id.* at 249–50 (citing *In re C.Z.B.*, 151 S.W.3d 627, 636 (Tex. App.—San Antonio 2004, no pet.)). The party seeking sanctions has the burden of showing his right to relief. *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993).

**Sanctions under rule 13**

Zeifman sought sanctions against Hays and Barrett under rule 13 for filing suit for injunctive relief against AISD and for doing so without providing notice to Zeifman. Under rule 13, "[t]he signatures of attorneys or parties constitute a certificate by them that they have read the

11

pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." Tex. R. Civ. P. 13. "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both." *Id*. Under rule 13, courts may "impose sanctions against parties filing frivolous claims to deter similar conduct in the future and to compensate the aggrieved party by reimbursing the costs incurred in responding to baseless pleadings." *Lovelace*, 243 S.W.3d at 254 (citing *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596–97 (Tex. 1996) (per curiam)).

### *Groundlessness*

In order to establish that Michels's lawsuit against AISD was "groundless," Zeifman had the burden of showing that the suit had "no basis in law or fact and [was] not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex. R. Civ. P. 13; *see Lovelace*, 243 S.W.3d at 254. To determine if a pleading was groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006, pet. denied). Groundlessness is thus more than an ultimate determination that the claim is not a winner. *See Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.).

Zeifman has argued that Michels's suit against AISD was groundless because this Court had already issued an opinion reversing the district court's modification order giving Michels

12

sole control over educational decisions. Our opinion, Zeifman asserts, reinstated the original divorce decree and terminated the effect of the Travis County standing order relied upon by Michels in seeking the injunction.[5] Zeifman contends that Michels's sole purpose in suing AISD for injunctive relief was to "evade the unfavorable judgment handed down by the Third Court of Appeals."

Appellees respond that, at the time of filing, Michels's attorneys believed, based on their research of then-existing case law, that an appellate court judgment was not effective or enforceable until the appellate process concludes and mandate has issued, thus leaving them a window of time in which they could advance Michels's interests under the modified decree. *See Edwards Aquifer Auth. v. Chemical Lime Ltd.*, 212 S.W.3d 683, 695–96 (Tex. App.—Austin 2006), *rev'd*, 291 S.W.3d 392 (Tex. 2009) ("An appellate court judgment is not enforceable in the lower court before mandate issues." (citing *In re Long*, 984 S.W.2d 623, 625–26 (Tex. 1999) (per curiam))). Hays described his research and conclusions on this issue during the hearing. We are compelled to agree that, especially given the state of the case law existing at the time, this position regarding the effect of our opinion and judgment was not objectively unsupported in law or fact or a good-faith argument for such an application or extension of then-existing law.

In contending otherwise, Zeifman claims that "Hays agreed that even if the mandate had not issued, the appellate court's decision reinstated the original order." However, Zeifman overlooks or mischaracterizes Hays's testimony from the sanctions hearing, which included the following exchange:

---

[5] The standing order provided that "[t]his entire order will terminate and will no longer be effective once the court signs a final order." Because a final order was signed in the original divorce decree, Zeifman reasons, our opinion reversing the modification order reinstated the prior final order and terminated the standing order.

Q: And was that your position on that date of August 10th that the agreed final decree of divorce in that provision governed or that the order that had been overturned by the Court of Appeals on May 25th, 2005, governed?

Hays: It was actually—that was the fall-back position. I firmly believe that the mandate did not—because a mandate had not issued, Judge Meuerer's order was still in effect.

As for a legal or factual basis to seek an injunction against AISD in particular, Zeifman points to Hays's testimony regarding the research he conducted prior to seeking an injunction against AISD:

I performed the research to see whether there was legal authority for being able to file a lawsuit against a third party to prevent them from aiding and abetting another party from violating a court order. And I found that there was authority that says you can file a lawsuit against a third party to prevent them from aiding and abetting. And once I saw that, that was the authority I was looking for. And that was the justification for filing this suit against AISD.

Although Zeifman questions the validity of Hays's conclusions and suggests that he should have done more research, he points to no cases that would persuade us that appellees lacked a good faith legal or factual basis for seeking relief against AISD. *See Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 191 n.15 (Tex. App.—Texarkana 2011, no pet.) (sanctions movant's argument that non-movant "failed to introduce evidence sufficient to support his claims . . . or to establish the merit of the underlying claim . . . misapprehends the parties' relative burdens"). Based on the circumstances known to the appellees at the time of the filing, and given our deferential review of acts committed to the district court's discretion, we cannot conclude that the court abused its discretion in concluding that the lawsuit was not groundless.

14

*Bad faith or purpose of harassment*

Even if the district court had concluded that the AISD lawsuit was groundless, Zeifman would also have to establish that Hays and Barrett brought the suit in bad faith or for the purpose of harassment. Under rule 13, "bad faith" requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must consider the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The party moving for sanctions must prove the pleading party's subjective state of mind. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Bad faith does not exist when a party merely exercises bad judgment or is negligent. *Id.* A party acts in bad faith if he has been put on notice that his understanding of the facts may be incorrect and he does not make reasonable inquiry before pursuing the claim further. *Robson*, 267 S.W.3d at 407. "Harass" is used in a variety of legal contexts to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person. *Thielemann*, 371 S.W.3d at 294 (citing *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.)).

Courts presume that pleadings, motions, and other papers are filed in good faith, and the party moving for sanctions has the burden of overcoming this presumption. *See* Tex. R. Civ. P. 13, 215; *Lovelace*, 243 S.W.3d at 256 (citing *Tanner*, 856 S.W.2d at 731). However, direct evidence of a sanctioned person's subjective intent is not required to rebut the presumption. *See Keith v. Solls*, 256 S.W.3d 912, 919 (Tex. App.—Dallas 2008, no pet.) (citing *Schexnider v. Scott*

15

*& White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no pet.)). Intent may be shown by circumstantial evidence as well as direct evidence. *Keith*, 256 S.W.3d at 919. Under an abuse of discretion standard, the trial court judges the credibility of the witnesses and may resolve any conflicting testimony. *Id.*; *Keever v. Finlan*, 988 S.W.2d 300, 313–14 (Tex. App.—Dallas 1999, pet. dism'd) ("The trial court's choices among merely conflicting pieces of evidence cannot be an abuse of discretion.").

Zeifman contends that the record supported a finding that the appellees "chose to file a lawsuit against AISD with the improper motive of controlling Zeifman's actions and to restrict his participation in his daughter's education decisions . . . , circumventing the ruling of the appellate court instead of seeking relief with the family law court or working within the confines of the original divorce decree." Zeifman further argues that the decision to file suit to enjoin AISD, instead of working with Zeifman to resolve the parties' disagreement pursuant to the divorce decree reveals a "malicious, dishonest and discriminatory purpose constituting bad faith."

Hays testified that he did not file the AISD lawsuit with the intent to frustrate, annoy, or harm Zeifman. Instead, he explained, "[t]he intent was to prevent Mr. Zeifman from removing [A.A.]. It was to keep [A.A.] in the school that she had been in for the previous two years and not to disrupt her life. The focus was on keeping [A.A.] in school and not—the focus wasn't on Mr. Zeifman." Hays further testified that, based on the evidence available to him, he "had a clear indication" that Zeifman was planning to withdraw A.A. from her current school and that his attorney would not stop Zeifman from acting. Zeifman admits that he was "prepared to enroll A.A. in Bryker Woods," but asserts that as of August 14, he had not actually done so, nor had he "shown any signs of self-help other than instigating a letter-writing battle between attorneys." In a letter to

Michels, however, Zeifman stated that he had "informed Brykerwoods of [A.A.'s] re-enrollment and completed the necessary paperwork."

Regarding Zeifman's complaint that the appellees were attempting to circumvent this Court's ruling, the appellees maintain that they believed Zeifman lacked authority to unilaterally enroll A.A. in Bryker Woods for at least three reasons: (1) the mandate on this Court's decision reversing the modification order had not yet issued; (2) the Travis County standing order prohibited Zeifman from withdrawing A.A. from her current school without Michels's agreement or a court order; and (3) if the divorce decree were again in effect, which they did not believe was the case, it would still require Zeifman and Michels to follow the recommendation of her then-current teacher at St. Andrew's. Thus, they argue that the injunction merely preserved the status quo. They also note that we later rejected Zeifman's belief that he was entitled to enroll [A.A.] in Bryker Woods over Michels's objection. *See In re Zeifman*, 2006 Tex. App. LEXIS 11340, at *2. Additionally, they point out that they fully disclosed this Court's opinion in their petition for injunctive relief and explained to the district court why they believed the opinion was not yet enforceable.

Zeifman also complains that the appellees failed to provide notice to him as required under the original divorce decree. However, at the time, the parties did not agree about whether or not the original divorce decree was in effect, and therefore whether or not notice pursuant to that decree would have been required. Hays further testified that he did not believe any of his actions violated the divorce decree:

> Q:      In your opinion, does seeking a temporary injunction and not giving the other parent notice, as you did in this case, violate the agreed decree of divorce and notice provisions contained in it.
>
> Hays:   No, it does not.

17

Zeifman also complains that the appellees filed suit with knowledge that his attorneys would be out of town. Specifically, Zeifman's attorney had notified Michels's attorney that he would be out of town from August 14–17, 2006 to attend a family law conference. However, Michels's attorneys obtained a TRO against AISD on August 14, 2006. The appellees point out that Zeifman notified Michels less than a week before the new school year was set to start on August 15 that he had "informed Brykerwoods of [A.A.'s] re-enrollment and completed the necessary paperwork." Accordingly, the appellees argue that the district court could reasonably have concluded that the appellees acted when they did, not to evade a challenge by Zeifman's attorneys, but because the school year was about to begin.

Although a different original fact-finder might have reached a different outcome on this record, that is not the standard under which this Court is required to review the district court's decision. Viewing the evidence in the light most favorable to the district court's ruling and drawing all reasonable inferences in favor of that ruling, as we must, we cannot conclude that the district court abused its discretion in its determination of appellees' subjective state of mind, concluding the injunction action was not filed in bad faith or with the intent to harass Zeifman. We overrule Zeifman's first issue. *See Lovelace*, 243 S.W.3d at 254–55 (finding no abuse of discretion in failing to award sanctions even though suit was statutorily barred); *see also Manning v. Enbridge Pipelines (East Tex.) L.P.*, 345 S.W.3d 718, 729 (Tex. App.—Beaumont 2011, pet. denied) (finding no abuse of discretion in trial court's refusal to impose sanctions and noting that "[c]onsidering the trial proceedings, the trial court is in a better position than this Court to decide whether to impose sanctions").

18

**Sanctions under chapter 10**

Zeifman also sought sanctions for the same conduct under chapter 10 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001–.005. That chapter provides as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

*Id*. § 10.001. Awards of attorney's fees under the Civil Practice and Remedies Code require essentially the same findings as does rule 13. *Lovelace*, 243 S.W.3d at 256. Although rule 13 requires a party to have filed a groundless pleading brought in bad faith or a groundless pleading for harassment, sanctions under chapter 10 can be awarded if the suit was filed for an improper purpose, even if the suit was not frivolous. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 411–12 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). However, having already decided that the district court did not abuse its discretion in concluding that the lawsuit against AISD was

not groundless, frivolous, brought in bad faith, or brought for the purpose of harassment, we similarly hold that the district court did not abuse its discretion in refusing to award sanctions under this provision of the Civil Practice and Remedies Code.[6] *See Lovelace*, 243 S.W.3d at 257 (holding trial court did not abuse its discretion in refusing to award sanctions under chapter 10 after concluding that suit was not "groundless, frivolous, brought in bad faith or brought for the purpose of harassment" for purpose of sanctions under rule 13). We overrule Zeifman's second issue.

**Award of attorney's fees**

In a third issue,[7] Zeifman argues that the district court erred in awarding $10,000 to each of the appellees in attorney's fees for successfully defending against his motion for sanctions pursuant to chapter 10 of the Civil Practice and Remedies Code, which provides as follows:

> The court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

Tex. Civ. Prac. & Rem. Code § 10.002(c).

---

[6] Zeifman relies on *Law Offices of Wendell Turley, P.C. v. French* to support his claim for sanctions under chapter 10. 164 S.W.3d 487, 491–92 (Tex. App.—Dallas 2005, no pet.). In the case, the Dallas Court of Appeals affirmed a trial court's order imposing sanctions against an attorney that filed duplicative proceedings in two separate courts. *Id.* at 489. The Dallas Court concluded that the trial court "*could have* determined appellants filed the Dallas lawsuit not to protect their legal interests, but to improperly circumvent an imminent ruling from the Tarrant County trial court poised to finally dispose of the same legal issues." *Id.* at 492 (emphasis added). By the same token, after a review of the evidence before it, we have concluded that the district court could have concluded that the appellees did not file the AISD lawsuit for an improper purpose.

[7] Michels and Hays suggest that Zeifman may have waived this issue because he did not list it as a separate "issue presented" in his brief and, they assert, he provided insufficient legal authority to support his argument. *See* Tex. R. App. P. 38.1(i). As Zeifman notes, "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." *See id.* R. 38.1(f). We conclude that Zeifman sufficiently briefed this issue.

20

Zeifman does not challenge the amount of attorney's fees the district court awarded—in fact, he stipulated below that $10,000 was a reasonable and necessary amount of attorney's fees for each of the appellees—but instead asserts that the district court abused its discretion in awarding the appellees attorney's fees at all. Other than complaining that the district court's award was predicated on an erroneous denial of his sanctions motion against appellees, an assertion we have rejected above,[8] Zeifman's central complaint is that the district court's award penalized him for taking the exact actions which he believes this Court instructed him to do. Zeifman points to the following statement in our opinion overturning the district court's ruling striking his petition in intervention:

> In light of our observation that Michels's conduct as alleged by Zeifman "is indeed disturbing," the district court on remand should carefully consider the facts known by Michels at the time she filed suit against AISD when determining whether sanctions are appropriate.

*Zeifman*, 229 S.W.3d at 468. Because this Court specifically instructed the district court to "carefully consider the facts known by Michels," Zeifman maintains that an award of Michels's attorney's fees would be particularly inappropriate.

As the appellees point out, this Court's statement did not refer to Michels's conduct, but rather to Michels's conduct *as alleged by Zeifman*. The merits of Zeifman's sanction motion were not before this Court at that time. This Court did not render judgment on the sanctions

---

[8] By the same token, Zeifman contends that the district court erred in not awarding him his reasonable and necessary attorney's fees incurred in connection with "responding to baseless proceedings" and to "deter similar conduct in the future." Because we have concluded that the district court did not abuse its discretion in denying his motion for sanctions, it similarly did not err in refusing to award him attorney's fees.

issue, but instead remanded and instructed the district court to carefully consider the matter. The district court did so and concluded that the evidence did not support the imposition of sanctions.

Though the term "prevailing party" is not explicitly defined in chapter 10, we conclude that by successfully defending against Zeifman's sanctions motion, each of the appellees were "prevailing parties." *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning . . . ."). Zeifman does not dispute that the appellees were prevailing parties within the meaning of the statute and he previously stipulated that their requested fees were reasonable and necessary. Accordingly, we conclude the district court did not abuse its discretion in awarding attorney's fees to the appellees for successfully opposing Zeifman's motion for sanctions. We overrule his third issue.

**Hays's cross-point**

In a cross-point, Hays requests that we impose damages against Zeifman under rule 45 of our appellate procedure rules for filing a frivolous appeal. *See* Tex. R. App. P. 45 ("If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages."). "The question of whether to grant sanctions is a matter of discretion, which we exercise with prudence and caution, and only after careful deliberation." *Jackson v. Hoffman*, 312 S.W.3d 146, 156 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We will impose sanctions only in circumstances that are truly egregious. *Jackson*, 312 S.W.3d at 156. To determine whether an appeal is frivolous, we "look at the record from the viewpoint of the advocate and decide whether he had reasonable grounds to believe the case could be reversed." *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

22

While Zeifman was ultimately unsuccessful in this appeal, we conclude that sanctions are not appropriate here. *See Easter v. Providence Lloyds Ins. Co.*, 17 S.W.3d 788, 792 (Tex. App.—Austin 2000, pet. denied) (sanctions unwarranted against ultimately unsuccessful party when she had reasonable expectation of reversal and there had been no showing that she pursued appeal in bad faith). We deny Hays's motion.

## CONCLUSION

Having overruled each of issues presented, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   August 22, 2013