

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00028-CV

BRYAN L. WALTER                                                    APPELLANT

V.

DONALD E. TELLER, JR. AND                                          APPELLEES
SONYA DEE JENNINGS

----------

## FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In four issues, Appellant Bryan L. Walter appeals the trial court's January 3, 2012 order imposing sanctions against him for violating chapters 9 and 10 of the civil practice and remedies code. We will modify the order and affirm it as modified.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

The trial court signed an agreed final decree of divorce in July 2008 that dissolved the marriage between David Jennings and Appellee Sonya Jennings. As part of the division of the marital estate, Sonya was awarded, among other things, a 2007 Jeep Compass and the responsibility for paying the "balance due . . . on the promissory note payable to Capital One Auto Loans[] and given as part of the purchase price of and secured by a lien on the" Jeep. The decree also included a section entitled, "Contractual Alimony," pursuant to which David agreed to pay Sonya $600 per month as contractual alimony for sixty months.

Sonya made the Jeep payments, but after losing her job, she had difficulty making the payments timely—she paid in the middle of the month instead of at the beginning—and she missed one payment. Because the financing for the Jeep was in David's name, Sonya could not get Capital One to "work" with her, and David would call and "harass [her about the late payments] every month." Eventually, Sonya learned through her divorce lawyer's office that David's attorney was going to begin proceedings "to take the car away" from her. So Sonya, who was "tired of [David] bullying [her]" and "could not afford to legally fight him," told David that if he wanted the Jeep, he should let her know where to take it. David left Sonya a voicemail instructing her to leave the Jeep at her apartment complex and explaining that he had insurance on it and would "deal with Capital One." David picked up the Jeep shortly thereafter, Sonya quit making the loan payments (although she tried to pay for the deficiency owed),

2

and although David paid approximately $1,900 towards the loan, Capital One eventually repossessed the Jeep. Up to that point, according to Sonya, there had been no mention of David's contractual alimony responsibility.

In August 2010, David filed an original petition, request for equitable relief, and request for disclosure in which he alleged a claim against Sonya for breach of contract. Referencing the divorce decree, David alleged that he and Sonya had agreed that he would pay contractual alimony to Sonya and that she would pay the Jeep loan. David claimed that he had upheld his end of the bargain but that Sonya had breached the contract by "ceasing to meet her obligation to make payments [on the Jeep]." David pleaded for rescission of the decree and, alternatively, damages for, among other things, "As of July 1, 2010, $15,000 in contractual alimony payments" and "$21,000 obligation for remaining contractual alimony payments."

In November 2010, Sonya filed a motion for sanctions against David and his attorney, Walter, arguing that they had violated chapter 10 of the civil practice and remedies code for, among other things, filing a claim that was not supported by existing law. David later filed a notice of nonsuit, and the trial court signed an order granting the nonsuit on May 24, 2011.

Between June 2011 and November 2011, the trial court conducted three hearings on Sonya's motion for sanctions, which she amended to include a violation of chapter 9 of the civil practice and remedies code. On January 3, 2012, the trial court signed the sanctions order that is the subject of this appeal,

3

finding that both David and Walter had violated chapters 9 and 10 of the civil practice and remedies code and ordering David to pay Sonya's attorney's fees in the amount of $6,830.00 and Walter to pay Sonya's attorney's fees of $13,657.50.[2] Walter, but not David, appeals the sanctions order.

### III. Void Sanctions Order

In his first issue, Walter argues that the January 3, 2012 sanctions order is void because the trial court signed it months after the court's plenary jurisdiction had expired. According to Walter, the May 24, 2011 order granting David's nonsuit "had the effect of dismissing the entire case and the date of that order was the starting point for determining when the trial court's plenary jurisdiction expired."

The expiration date for a trial court's plenary power is calculated from the date the court enters a final order disposing of all the claims and parties. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 95–97 (Tex. 2009). "A judgment dismissing all of a plaintiff's claims against a defendant, such as an order of nonsuit, does not necessarily dispose of any cross-actions, such as a motion for sanctions, unless specifically stated within the order." *Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009). Thus, an order of dismissal pursuant to nonsuit is not a final, appealable order when the order does not "unequivocally express an

---

[2]The sanctions order also directed Walter to pay Sonya's attorney $15,000 in the event Walter unsuccessfully appealed the order to the court of appeals and $20,000 in the event of an unsuccessful appeal to the supreme court.

4

intent to dispose of all claims and all parties." *Id.* at 841; *see Unifund CCR Partners*, 299 S.W.3d at 95–97 (reasoning that sanctions order was not void because motion for sanctions was (1) pending when trial court signed dismissal order and (2) not specifically referenced by dismissal order); *see also* Tex. R. Civ. P. 162 ("A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court.").

Here, Sonya filed her original motion for sanctions in November 2010, and the trial court signed the order granting David a nonsuit in May 2011. The motion for sanctions was therefore pending when the trial court signed the dismissal order. As for the finality of the dismissal order, it is entitled, "Order Granting Nonsuit," and it states, "On May 24, 2011, the Court received the Notice of Nonsuit of DAVID LYNN JENNINGS and ORDERS this case dismissed without prejudice to DAVID LYNN JENNINGS's right to refile it. All costs incurred are taxed against DAVID LYNN JENNINGS, for which let execution issue if not paid." The dismissal order did not specifically reference Sonya's motion for sanctions or otherwise unequivocally express any intent to dispose of the motion; therefore, the order was not a final order that disposed of the motion for sanctions. *See Unifund CCR Partners*, 299 S.W.3d at 96–97 (conducting similar analysis); *In re Anderson*, No. 01-10-00182-CV, 2010 WL 1612309, at *2 (Tex. App.—Houston [1st Dist.] Apr. 19, 2010, orig. proceeding) (mem. op.) (same). Accordingly, the

trial court's plenary power had not expired before it entered the January 3, 2012 sanctions order. We overrule Walter's first issue.

## IV. MERITS OF SANCTIONS ORDER

In his fourth issue, Walter argues that the trial court abused its discretion by imposing sanctions against him under chapters 9 and 10 of the civil practice and remedies code because the original petition "was not groundless and without evidentiary support when it was filed and was not filed for an improper purpose." We limit our analysis to the propriety of ordering sanctions under chapter 10.

We review a trial court's ruling on a motion for sanctions under an abuse-of-discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire*, 134 S.W.3d at 838–39.

Chapter 10 of the civil practice and remedies code permits sanctions for the filing of frivolous pleadings and motions. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006 (West 2012). Specifically, section 10.001 provides in relevant part as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonably inquiry:
>
> . . . .
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous

6

argument for the extension, modification, or reversal of existing law or the establishment of new law[.] . . .

*Id.* § 10.001(2).  A court that determines that a person has signed a pleading or motion in violation of section 10.001 may impose a sanction against the person who signed the pleading.  *Id.* § 10.004(a).

Sonya argued in her original motion for sanctions that Walter should be sanctioned for filing the original petition because, in violation of civil practice and remedies code section 10, the petition contained a "claim, defense or other legal contention that is not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law."[3]  Sonya outlined the specific offending conduct as follows:

> a. Plaintiff's Petition seeks rescission of the parties' divorce decree (including rescission of $21,000.00 in remaining contractual alimony payments) . . . .
>
> . . . .
>
> c. Plaintiff's Petition seeks damages and attorney's fees that have not been incurred and that are not reasonably related to this suit.
>
> d. Plaintiff's Petition seeks to use this lawsuit as a sledgehammer to release Plaintiff from a $21,000.00 contractual alimony obligation.

At the hearing on the motion for sanctions, David agreed that his damages claim included a request that he be awarded $15,000 for contractual alimony payments

---

[3]The amended motion for sanctions contained much of the same language and allegations.

that he had already made and that he be released from paying the remaining $21,000 in contractual alimony payments owed.

The trial court was well within its discretion to sanction Walter for violating civil practice and remedies code section 10.001(2) because the damages allegations contained in the original petition included two contentions that are not warranted by existing law. Specifically, the record demonstrates that the conduct for which David sought to hold Sonya accountable was her alleged failure to continue making the Jeep payments. Instead of filing a motion to enforce Sonya's responsibility to make the Jeep payments, Walter, on behalf of David, chose to sue Sonya under a breach-of-contract theory.[4] Walter alleged that Sonya had breached the contract by "ceasing to meet her obligation to make payments [on the Jeep]," and he claimed that David's damages included, among other things, "$15,000 in contractual alimony payments" and "$21,000 obligation for remaining contractual alimony payments." Thus, David alleged that his damages for Sonya's alleged failure to continue making Jeep payments included

---

[4]Contractual alimony agreements are enforceable as contracts and are governed by contract law, *see Heller v. Heller*, 359 S.W.3d 902, 903 (Tex. App.—Beaumont 2012, no pet.), but Walter argues that the *entire* divorce decree (not just the alimony agreement) is enforceable as a contract, in part because the decree contains the following statement under a heading that says "Agreement of Parties": "To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract." For purposes of this analysis, we will assume without deciding that David had the option to bring a breach-of-contract claim against Sonya for her alleged failure to continue making the Jeep payments.

reimbursement of contractual alimony payments and termination of his future contractual alimony obligation.

It is well established that to recover damages for breach of contract, a plaintiff must show that the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687–88 (Tex. 1981). The absence of this causal connection between the alleged breach and the alleged damages will preclude recovery. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.).

To the extent that Sonya's responsibility to make the Jeep payments was enforceable as a contractual obligation, there is nothing in the record to indicate that David's damages for Sonya's alleged breach of that obligation could have included reimbursing David for contractual alimony payments already made, termination of his future contractual alimony obligation, or both. Indeed, there is a complete lack of any causal connection between the alleged breach and the alleged damages.[5] Walter attempts to establish a connection between the allegations by stating that Sonya specifically agreed to make the Jeep payments in exchange for David's agreement to make contractual alimony payments, but

---

[5]Walter points out in his brief that as a result of Sonya's alleged breach, David "incurred damages resulting from payments that he made to Capital One Auto Finance, harm to his credit, and liability to Capital One Auto Finance after the Jeep was repossessed." Conveniently, he does not mention the damages allegations that were the subject of the motion for, and order imposing, sanctions.

9

the rules of contract construction, as applied to the decree, belie this argument.[6] *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If Walter wanted to seek reimbursement for Bryan's past alimony payments or to discontinue Bryan's obligation to make future alimony payments, shoehorning that desire into a damages allegation associated with a completely unrelated contractual obligation was not the way to do it.

Accordingly, we hold that the trial court did not abuse its discretion by sanctioning Walter for violating civil practice and remedies code section 10.001(2). We overrule Walter's fourth issue.

## V. SANCTIONS ORDER DESCRIPTION

In his third issue, Walter argues that the order imposing sanctions inadequately describes the conduct that the trial court found to be in violation of civil practice and remedies code section 10.001(2).

Section 10.005 provides that "[a] court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code Ann. § 10.005. Merely tracking the language of the statute is insufficient. *Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.).

---

[6]The amount of David's monthly contractual alimony payment and the amount of the monthly Jeep payment are too disparate to establish the connection that Walter argues.

10

The order imposing sanctions stated in relevant part as follows:

> Plaintiff's Original Petition, Request for Equitable Relief, and Request for Disclosure filed on August 6, 2010, was groundless when filed, filed for an improper purpose and includes a claim that is not warranted by existing law, and each factual claim did not have evidentiary support even after a reasonable opportunity for discovery and further investigation, in that: *Plaintiff alleged that contractual*[] *alimony payments may be repaid to Plaintiff or terminated although such a claim was groundless and not warranted by existing law.* [Emphasis added.]

Although concise, the order specifically identifies the conduct underlying the trial court's decision to sanction Walter—that the damages allegations for Sonya's alleged failure to continue making Jeep payments included reimbursement for contractual alimony payments already made, termination of the future contractual alimony obligation, or both. We hold that the conduct portion of the sanctions order is sufficient to meet section 10.005's specificity requirement, and we overrule Walter's third issue.

## VI. CHAPTER 9

Walter argues in his second issue that the trial court abused its discretion by additionally imposing sanctions under chapter 9 of the civil practice and remedies code.[7] Section 9.012(h) states, "This section does not apply to any proceeding to which Section 10.004 . . . applies." Tex. Civ. Prac. & Rem. Code Ann. § 9.012(h) (West 2012). Having determined that the trial court did not abuse its discretion by sanctioning Walter under chapter 10, we hold that the trial

---

[7]Sonya concedes that sanctions under chapter 9 "would become inapplicable" if we affirm the sanctions order under chapter 10.

11

court abused its discretion by also sanctioning Walter under chapter 9. We sustain his second issue.

## VII. CONCLUSION

Having overruled Walter's first, third, and fourth issues and having sustained his second issue, we modify the January 3, 2012 order imposing sanctions to remove any reference to chapter 9 of the civil practice and remedies code. We affirm the order as modified. *See* Tex. R. App. P. 43.2(b). Because we affirm the order imposing sanctions as modified, Walter's appeal is unsuccessful, and the trial court's conditional award of $15,000 in appellate attorney's fees to Donald E. Teller, Jr., Sonya's attorney, is now unconditional. Therefore, pursuant to the trial court's order, Walter shall pay Teller the sum of $15,000 in appellate attorney's fees.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED: June 27, 2013