

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00123-CV

JOHN HAWKINS                                                          APPELLANT

V.

ANGELA MYERS                                                          APPELLEE

----------

### FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2012-20790-158

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, Appellant John Hawkins asserts that the trial court erred by granting summary judgment to Appellee Angela Myers, denying Hawkins's summary judgment, entering sanctions against Hawkins, and denying Hawkins's

---

[1]*See* Tex. R. App. P. 47.4.

motion for new trial. We affirm the trial court's summary judgment and vacate the order of sanctions.

## II. Background

Myers owns a company called Axis Meeting Group, LLC, which performs event planning. One of Myers's largest clients is Yum! Restaurants International (YRI). Until 2009, Myers also worked for Fusion Performance Marketing. In late 2009, Myers left Fusion; around the same time, Frito-Lay's event planner passed away—leaving a vacancy at the company.

Paul Zmigrosky, the senior vice president of procurement for PepsiCo Worldwide at the time, was a friend of Hawkins. Hawkins told Zmigrosky about Myers, who he had known for over twenty years and worked with in the past, and indicated that she would be a perfect fit for the position at Frito-Lay.[2] The two began to exchange emails concerning Myers in September 2009. In early October, Zmigrosky confirmed that he had received approval to hire Myers and that an offer should be forthcoming within twenty-four hours. Hawkins then forwarded this email to Myers.

---

[2]Frito-Lay is a wholly owned subsidiary of PepsiCo.

Myers and Hawkins then began to exchange emails discussing the hiring process,[3] the details of the Frito-Lay job offer,[4] and Myers's continued work with YRI.[5] Hawkins asserts that he and Myers agreed to split the proceeds from a 2011 YRI event in exchange for Hawkins's helping Myers get an interview with Frito-Lay and negotiating her salary, bonuses, signing bonuses, start date, and permission to be able to operate the YRI program in 2011 and going forward.

Myers accepted an offer from Frito-Lay at the end of October 2009 that allowed her to continue her work with YRI. After Myers began working for Frito-Lay, Hawkins continued to email her about their "agreement," inquiring as to when he could expect to receive payment. Myers responded a few times, indicating that the final billing had not been completed and that she would send money to Hawkins once everything was completed.

In 2011, Hawkins hired counsel, who sent a demand letter to Myers. Myers responded by emailing Hawkins's counsel asserting that there was no agreement between herself and Hawkins and that any money she would have

---

[3]In early October, Myers expressed concern about the length of time it was taking to finalize the offer. Hawkins indicated that he had talked with Zmigrosky and that everything was still on track.

[4]Myers received an offer from Frito-Lay that was below what she was expecting; she and Hawkins discussed the possibility of a counteroffer.

[5]In an October 11 email, Hawkins gave his "thoughts" regarding Myers's continued work with YRI, advising her to insist on being "paid [her] salary for the next 6 months [so it would be] . . . a win win for [her] also."

given Hawkins "would have been a 'gesture of kindness' nothing else." Hawkins ultimately sued Myers for breach of contract.

After filing suit, Hawkins issued a notice of deposition by written questions and subpoena to Myers's client, YRI. Attached to these questions was a document that contained alleged misstatements of fact and allegations of fraud that Myers allegedly committed upon YRI. Following the receipt of these documents, Myers filed a "Defendant's Motion to Quash the Notice for Deposition on Written Questions and Motion for Emergency Protective Order" and attached to this motion the document containing the alleged allegations of fraud she was seeking to quash. The trial court granted the motion and quashed the subpoena.

Myers then filed a motion for Rule 13 sanctions. In this motion, Myers also asked for sanctions under Rule 215. Attached to the motion was the subpoena and deposition on written questions issued to YRI. Myers also attached her affidavit setting forth the misstatements of fact contained in the subpoena and the alleged irreversible harm this subpoena would cause if served on YRI. After a hearing, the trial court granted the motion and awarded sanctions. The court found that Hawkins had violated Rule 215.3 and awarded Myers "$5,000.00 as reasonable and necessary attorney's fees pursuant to Tex. R. Civ. P. 215.3."

In August 2013, Hawkins filed a traditional motion for summary judgment. Myers responded and then filed her own motion for partial summary judgment. Hawkins responded to Myers's summary judgment motion and objected to her supporting evidence. On October 31, 2013, after hearing the parties' motions on

4

October 28, 2013, the trial court signed an order granting Myers's motion and denying Hawkins's motion without specifying on what grounds. The court overruled Hawkins's objections to Myers's summary judgment evidence.

Hawkins and Myers each later dismissed all other claims so that the summary judgment order could become final and appealable. Hawkins filed a motion for new trial, which was overruled by operation of law.

### III. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Chau v.*

5

*Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Chau*, 254 S.W.3d at 455; *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## IV. Discussion

### A. Summary Judgment

In his first and second issues, Hawkins asserts that the trial court erred in granting Myers's motion for summary judgment and denying his motion for summary judgment because the parties formed a valid contract and because the statute of frauds is inapplicable. In part of his fourth issue, he argues that the trial court abused its discretion by denying his motion for new trial on the same basis.

Before a plaintiff can prove a breach of contract, an enforceable contract must exist. *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The plaintiff must prove that there was (1) an offer, (2) an

6

acceptance, (3) a meeting of the minds, (4) consent to the terms of the contract by each party, (5) execution and delivery of the contract with the intent by both parties that it become mutual and binding on each, and (6) consideration.[6]  *Id.*; *Hubbard*, 138 S.W.3d at 481.

One of the most fundamental elements of an enforceable contract is consideration.  *Hubbard*, 138 S.W.3d at 481*.*  In order for a contract to be enforceable, it must be based on valid consideration.  Consideration is "[s]omething (such as an act, a forbearance, or a return promise) *bargained for* and received by a promisor from a promisee."  Black's Law Dictionary 347 (9th ed. 2009) (emphasis added).  It is a contemporaneous exchange between parties that serves as an inducement by which the parties are moved to bind themselves to an agreement.  *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (noting that "consideration is a *present* exchange bargained for in return for a promise") (emphasis added).  In other words, there must be some kind of quid pro quo between the parties.  *See Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (noting that consideration is a bargained-for exchange of promises).

Consideration can be in the form of performance.  *See* Tex. Bus. & Com. Code Ann. § 3.303(1) (West 2002) ("An instrument is issued or transferred for

---

[6]The elements of a written contract and an oral contract are the same and must be present in order for it to be binding.  *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).

value if . . . the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed."); *see also* Restatement (Second) of Contracts § 71 (1981) (explaining the types of exchange that constitute consideration, including performance). However, that performance must be bargained-for. *See TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 672 (Tex. App.—Austin 2002, no pet.) (noting that "it *is* essential . . . that the consideration be bargained for"). A promise given after performance has already been completed is not valid consideration. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 660 (Tex. 2006) (noting that past consideration is not consideration); *see also Cent. Tex. Micrographics v. Leal*, 908 S.W.2d 292, 296 (Tex. App.—San Antonio 1995, no writ) (holding that an employer's promise to take an employee on a trip for a job well done was "nothing more than a gratuitous promise unsupported by consideration").

Here, Hawkins asserts that the evidence supporting his breach of contract claim is uncontroverted; however it is Hawkins's deposition that provides evidence that his performance was not sufficient to establish valid consideration. Hawkins's testimony indicates that the offer of money made by Myers was in response to the help Hawkins gave her in trying to obtain the job with Frito-Lay. Hawkins stated in his deposition that he "got [Myers's] permission from Frito-Lay to allow her to be able to take the job at Frito-Lay and still do the program for YRI and—for another corporation in 2011 . . . . [and] those were [Hawkins's] obligations that put [him] in the spot where [Myers] made the offer, and [Hawkins]

8

accepted." Moreover, the email referenced by Hawkins that he asserts is proof

of an agreement between the parties is only further evidence of the offer coming

after the promise by Hawkins to help Myers get the job:

> October 15, 2009
> Myers: I spoke with Donna Defferding yesterday about the position . . . she thought I would hear from HR yesterday or this morning at the very latest . . . but still not a peep. I'm not worried about the offer . . . what I am worried about is if this is typical of what it takes to get something done in their corporation its [sic] certainly not impressive.
>
> October 16, 2009
> Hawkins: Thanks for keeping me in the loop on what is going on. The real issue behind that is there is a hiring freeze in place. . . . You mention[ed] to me how I would be your partner in 2011 on YRI? I accept if you really meant it.
>
> Myers: . . . And yes on YRI 2011 . . . *since you brokered the arrangement with FL*. [emphasis added]

According to the record, Hawkins began communications with Frito-Lay

concerning a job for Myers in September 2009 with approval for the job coming

October 12, 2009. Myers's and Hawkins's emails concerning the Frito-Lay job

and even YRI never mentioned an agreement to split any money. It was not until

October 15, 2009, when the above exchange took place, that there was any

mention of an agreement. By this point Hawkins had already been in the midst of

performing the "obligations" he asserts were the basis for the contract with

Myers. As such, according to Hawkins's testimony, his performance was not a

9

bargained-for exchange and thus was not sufficient to form the basis of a valid and enforceable contract.[7]

Because Hawkins did not establish sufficient consideration in order to form a valid contract, we overrule Hawkins's first issue and the part of his fourth issue that pertains to this argument.[8]

## B. Sanctions

In his third issue, Hawkins argues that the trial court abused its discretion by ordering sanctions "under Tex. R. Civ. P. 215.3 without a motion for such relief, without an evidentiary hearing, without the admission of any exhibits,

---

[7]Hawkins argues that under Rule 54 his performance is established as a matter of law. *See* Tex. R. Civ. P. 54 (providing that a plaintiff's assertion that all conditions precedent have occurred is sufficient to overcome a defendant's general denial, and unless specifically denied by the defendant, the plaintiff does not have to prove the satisfaction of such conditions). In his First Amended Petition, Hawkins pled that all conditions precedent occurred. In response, Myers generally denied all claims and then made several further specific denials. Among those denials, Myers included the following: "Plaintiff's claims are barred, in whole or in part, because the alleged contract lacked the essential element of consideration for [sic] form a legally binding contract upon Defendant." This statement specifically denies one of the foundational elements of a valid contract—consideration. As such, the burden of proof then shifted to Hawkins to prove that he had indeed performed in a manner that was sufficient to form a legally binding contract (and, in the alternative, remove the claim out of the statute of frauds) and thus avoid summary judgment. *See "Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex. 1972) (holding that in order to avoid summary judgment against the plaintiff, plaintiff had the burden to raise a fact issue concerning its defense to the statute of frauds).

[8]Because we overrule Hawkins's first issue on the basis of an invalid contract, we do not consider his second issue as to the statute of frauds. *See* Tex. R. App. P. 47.1.

10

without any evidence of any wrongdoing, without taking judicial notice of any matter, and without any evidence of attorneys' fees."

We review a trial court's ruling on a motion for sanctions for abuse of discretion. *Humphreys v. Meadows*, 938 S.W.2d 750, 751–52 (Tex. App.—Fort Worth 1996, writ denied). A trial court abuses its discretion if it acts without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). We review the entire record to determine whether the imposition of sanctions constitutes an abuse of discretion. *Law Offices of Windle Turley, P.C.*, 164 S.W.3d 487, 490–91 (Tex. App.—Dallas 2005, no pet.). We may not substitute our judgment for that of the trial court. *Id.* at 491.

When a trial court finds a party has abused the discovery process, the court is authorized to impose a sanction that is just under the circumstances. Tex. R. Civ. P. 215.3. When determining whether a sanction is just, a court first considers whether there is a reasonable relationship between the abusive conduct and the sanction imposed. *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (stating that "the sanctions the trial court imposes must relate directly to the abuse found"); *Hanley v. Hanley*, 813 S.W.2d 511, 523 (Tex. App.—Dallas 1991, no writ) (holding that an award of attorney's fees in excess of what is reasonable and not related to harm suffered as a result of discovery abuse is unjust and not authorized by rule 215). Second, a court

11

considers whether the sanction is excessive. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Hanley*, 813 S.W.2d at 522–23.

A sanctions order that awards the moving party attorney's fees is unjust if the record is void of any evidence as to the amount of attorney's fees reasonably incurred as a result of the allegedly violative conduct. *See Estrello v. Eloboar*, 965 S.W.2d 754, 759 (Tex. App.—Fort Worth 1998, no pet.) (stating the general rule that a party seeking attorney's fees must put on evidence of such fees); *see also Werley v. Cannon*, 344 S.W.3d 527, 532 (Tex. App.—El Paso 2011, no pet.) (same).

The record contains no such evidence here. Myers's counsel had an opportunity at the hearing to offer evidence of attorney's fees and court costs but did not. Although both parties' counsel discussed attorney's fees at the sanctions hearing, Myers's counsel did not submit an affidavit or testify regarding the reasonableness, necessity, or amount of the fees.[9] Likewise, there is no other evidence in the record that would allow this court to determine what the trial court based the fees award on, if there was a reasonable relationship between the conduct and sanction imposed, or whether the sanction was excessive. *See In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (stating the factors to consider when determining whether the sanctions a trial court imposes are just:

---

[9]While Myers's counsel tendered an exhibit to the court containing information regarding his attorney's fees and swore to its contents, it was never offered or filed with the clerk and thus is not part of the record.

12

(1) a direct relationship between the offensive conduct and the sanction and (2) excessiveness). Therefore, the trial court abused its discretion by awarding $5,000 in attorney's fees as a sanction. *See Estrello*, 965 S.W.2d at 759 (holding that a party seeking attorney's fees must put on evidence of such fees).

We sustain Hawkins's third issue.[10]

## V. Conclusion

Having overruled Hawkins's first and part of his fourth issue, and having determined we need not address his second, we affirm the trial court's order granting Myers's partial summary judgment motion and denying Hawkins's summary judgment motion. Having sustained Hawkins's third issue, we vacate the trial court's sanctions order.

/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED: December 31, 2014

---

[10]We need not address the remainder of Hawkins's arguments regarding the sanctions award. *See* Tex. R. App. P. 47.1.

13